# CASES DETERMINED

AT THE

# January Term, 1927.

---

RUBIN, Plaintiff in error, vs. THE STATE, Defendant
in error.

*December 10, 1926—January 11, 1927.*

*Contempt of court: By attorney trying case: Charging court with
undue interference with cross-examination: Duty of court to
protect witness: Finding of court as to contempt: Summary
punishment: Due process of law.*

1. Courts are institutions set up by society for administering justice, and their procedure should be characterized by order and dignity becoming to the responsible and delicate nature of their functions. pp. 6, 7.
2. It is part of the duty of a trial judge to protect witnesses from unfair cross-examination. p. 10.
3. Where, during a colloquy between the court and an attorney, the latter had excepted seriatim to every remark made by the court, the voluntary remark of the attorney that "I take exception to this undue interference with my cross-examination" was wholly unjustified and extremely improper and disrespectful, and constituted a contempt of court. p. 10.
4. In cases of direct contempt, where there is no trial and no evidence preserved, a finding by the trial court as to the attitude, temper, manner, and tone of voice of the contemnor is binding upon the appellate court. pp. 11, 12.
5. Contempts committed in the immediate view and presence of the court may, under sec. 256.04, Stats., be punished summarily, and a failure to present a formal complaint and give the contemnor an opportunity to defend is not a denial of due process of law. p. 12.

ERROR to review a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Affirmed.*

The plaintiff in error (hereinafter called the defendant) was adjudged guilty of criminal contempt, committed in the presence of the court, and fined $25. To review said judgment he brings this writ of error.

It appears that on the 20th day of April, 1926, during the trial of the case of Harry Chudy v. Milwaukee Northern Railway Company, defendant, acting as attorney for the plaintiff, was cross-examining a witness in behalf of the defendant. The court, evidently regarding such cross-examination as unduly severe and unfair, interrupted the defendant. A colloquy ensued between the court and the defendant, which resulted in the adjudication of contempt which it is sought to review. The adjudication in the first instance was oral. The defendant was fined $25, which he promised to pay. At the close of the trial, and after the jury had retired, the court made and filed a formal judgment in which the proceedings leading up to the adjudication are recited in the following language:

"On this 20th day of April, A. D. 1926, at the hour of about 3 o'clock p. m., the court being in session, and the action of Harry Chudy, Plaintiff, vs. Milwaukee Northern Railway Company, Defendant, being then on trial before the court and a jury, the above named *W. B. Rubin* did then and there, in open court, and in the immediate view and presence of the court and jury, become guilty of disorderly, contemptuous, and insolent behavior directly tending to interrupt the court's proceedings and to impair the respect due to its authority, in that the said *Rubin,* after he had previously completed the taking of exceptions to which he deemed himself entitled to certain rulings of the court, and after the court had thereupon announced 'We will proceed,' said *Rubin* in disregard of that direction, and without reason, and not in reply to anything then pending or said to him, did, with an arrogant, hostile, and defiant tone and manner, and casting looks in the direction of the jury box, obviously bespeaking sympathy or approval, and referring to rulings to which exceptions had been noted, make the following

Rubin v. State, 192 Wis. 1.

statement under guise of an exception no longer necessary: 'I take exception to this undue interference with my cross-examination,' and that this occurred under circumstances disclosed by the record substantially as follows:

"That said *Rubin,* while cross-examining, as attorney for the plaintiff, a young man about twenty years old, relative to various occurrences and details thereof which had occurred some three years previously, and after having repeatedly carried answers of the witness into the next question for argumentative purposes before the jury, and after having persistently rushed and crowded questions upon the witness in such a manner as to deprive the latter of a fair and reasonable opportunity to think and speak, finally arose from his chair and advancing forward, in a stern and commanding voice put to the witness the following question, with a command in the nature of a question:

" 'You cannot swear that you saw the automobile moving, can you, at that time? How about answering that question?'

"Whereupon the following took place:

"The Court: Just a minute, *Mr. Rubin.* Let the boy finish. It is only fair to give him a chance to think. Some of us seem to think faster than others. He cannot think like a trial lawyer. Here is a man twenty years of age. Just one minute. Read the question.

"*Mr. Rubin:* Now, wait a minute, Your Honor. I take exception to the remarks.

"The Court: You have an exception.

"*Mr. Rubin:* I am certainly fair with this witness.

"The Court: I will say on the record, now, that you did not give the witness a chance to think and answer. That is the record as it is made, too.

"*Mr. Rubin:* I take exception to the remarks.

"The Court: And you have your exception to the remarks.

"*Mr. Rubin:* Q. Is there anything about my questions that you do not understand?

"The Court: You need not answer that. It is too general.

"*Mr. Rubin:* I take exception to that, too.

"The Court: You have an exception to every ruling, without referring to it, as a matter of course; and you know it.

Rubin v. State, 192 Wis. 1.

"*Mr. Rubin:* But, Your Honor—

"The Court: We will proceed.

"*Mr. Rubin:* I take exception to this undue interference with my cross-examination.

"The Court: *Mr. Rubin,* this is not undue interference. We will declare a recess. The court is ruling as it has a right and a duty to rule. We will take a recess, members of the jury.

"Thereupon the court excused the jury, and after the jury had retired to its jury room the following occurred in open court, but in the absence of the jury:

"The Court: Have you anything else to say, *Mr. Rubin?*

"*Mr. Rubin:* Nothing.

"Whereupon the court announced from the bench, in the presence of the said defendant, the adjudication of contempt hereby evidenced by this formal order:

"It is therefore ordered and adjudged that he, the said *W. B. Rubin,* is guilty of a criminal contempt of court by reason of his conduct and statements found, and that as punishment for said contempt he pay a fine of twenty-five dollars.

"Said defendant having announced his readiness to pay said fine forthwith, the court omits from this order any provision to coerce such payment."

The record of the proceedings had before the court at the time of the contempt adjudication has been returned here as a part of this record, and the following is referred to as supplementing what was preserved in the formal judgment above quoted. The record of just what occurred shows the following:

"The Court: Have you anything else to say, *Mr. Rubin?*

"*Mr. Rubin:* Nothing.

"The Court: You called the ruling of the court 'undue interference.' The court will find you guilty of contempt of court. It will cost you twenty-five dollars, *Mr. Rubin.* This court is ruling as it sees its duty, and counsel has no right, in the trial of a lawsuit, to call the court's ruling 'undue influence [interference]' in the presence of the jury. It is a play to the jury, intended for ulterior purposes, unprofessional, and wrong.

*"Mr. Rubin:* I think the court's interruption of my cross-examination, intimating I was unfair with the witness—

"The Court: You were unfair. The record is made that you were very unfair to the witness. And I will not recede from the position. Here is a man who impresses the court as very honest. The court has the right to exercise its discretion and presume some people to be honest. The boy is doing the best he can. The court will not allow browbeating.

*"Mr. Rubin:* I take exception. He has told a story that I have a right to regard as at variance with the plaintiff's theory of the case.

"The Court: The record is made. I do not care to have a running discussion with you at all.

*"Mr. Rubin:* But you ought not to be permitted to make statements without my answering them.

"The Court: I asked you if you had anything else to say, and you said you did not.

*"Mr. Rubin:* I did.

"The Court: Very well. The record is made.

*"Mr. Rubin:* I do not think I owe the court an apology. I have been very fair.

"The Court: It will cost you twenty-five dollars.

*"Mr. Rubin:* I will pay it, but I will have to have time to pay it.

"The Court: Now, what will you do with this trial? Hearing nothing said, we will proceed. Call the jury."

Thereupon the jury was recalled and the trial proceeded.

*W. B. Rubin* of Milwaukee, *in pro. per.*

For the defendant in error there was a brief by the *Attorney General, Eugene Wengert,* district attorney of Milwaukee county, and *Daniel W. Sullivan,* first assistant district attorney, and oral argument by *Mr. Sullivan.*

Owen, J. The defendant is a practicing attorney of long experience. He has a thorough understanding of professional ethics, the relations that should obtain between court and counsel, and that degree of respect due from the bar to the court. In his brief the defendant gives expression to rather high-minded abstract principles which he concedes

should prevail in the conduct of court proceedings.   For instance, he says:

"We firmly hold that in the interest of justice there should be orderly procedure; that a proceeding in court should at all times be dignified; that neither judge nor attorney should, toward each other, or toward litigant or witness, engage in any conduct or language that shall invite disrespectful criticism.   We concede that the court has the inherent right summarily to punish counsel for contempt.   We concede also that the judge should have that inherent power without interference or interruption and that he should exercise it without fear or favor and with great expedition. . . . We neither claim nor expect immunity from punishment for contempt because of age, experience, acquaintance, or influence."

In another portion of the brief he says:

"In the interest of a courageous bar, however, ever mindful of the oath that a lawyer takes, but feeling that 'due respect for and courtesy to the bench' does not mean sycophancy, and at the request of other members of the profession in Milwaukee as a protest against arbitrary judicial conduct which is on the rise, as well as in vindication of a personal right, this matter is brought here for review."

While the foregoing expressions indicate that the defendant has a rather clear conception, in the abstract, of the relations which should obtain between court and counsel, it appears that he is not quite so clear when he comes to apply such abstract principles to concrete situations.   If it be true that this appeal has been encouraged "by other members of the profession in Milwaukee as a protest against arbitrary judicial conduct which is on the rise," then it would seem that a recurrence to fundamental principles is timely.

Courts are institutions set up by society for the purpose of administering justice, the attainment of which is the ultimate end of organized government.   Because of the grave and delicate nature of their functions, society, from time im-

memorial, has accorded to courts the greatest respect. This respect proceeds from an intuitive and deep-seated sense of propriety. Human instinct decrees it as the appropriate attitude for society to assume towards the most exalted institution of its creation. This respect is not accorded to the Judge—the man. The Judge presiding over a court is one character. The Judge in his chambers another. The Judge in his home or on the street quite another. The Judge as an individual may or may not be accorded the respect which by common consent belongs to the institution—the Court. The Judge as the individual is not entitled *per se* to any particular degree of respect. He is entitled only to that regard to which his standing and character in the community entitles him. As an individual he has no power to coerce respect. It is the institution—the Court—to which belongs that degree of respect commensurate with the place which it occupies in the scheme of organized society. The Judge and the Court are not identical. The Judge is a man. The Court is an institution. It requires something more than a Judge sitting on the bench to constitute a Court. It requires, in addition, the existence of conditions authorizing the exercise of the powers of a court. It requires the presence of that upon or over which the powers of a court may be exerted, namely, a controversy involving legal or human rights. It requires the presence of litigants, generally attorneys, usually officers, such as bailiff, clerk, etc., and frequently jurors. To constitute a court, some of these elements must concur with the presence of a presiding judge. It is this institution, as distinguished from the Judge, that merits and enjoys the respect of society.

The procedure of courts should be characterized by order and dignity becoming to the responsible and delicate nature of their functions. The usefulness of the individual court and the repute in which it is held depends in no small degree

Rubin v. State, 192 Wis. 1.

upon the manner in which the work of the court is conducted. Society entertains high ideals in this respect, ideals that cannot be slighted without a corresponding loss of respect. Upon the Judge first of all devolves the duty, by his attitude and demeanor, of maintaining the dignity of the court over which he presides. He should be dignified in his bearing, gentlemanly in his address. He should manifest an appreciation of the gravity of his duties and a conscientious consideration in the discharge thereof. He should maintain impartial poise. He should be conscious of no bias or prejudice. He should avoid display of temper. He should neither indulge nor permit heated controversy between court and counsel. He should at all times keep the proceedings of his court under firm control and within the bounds of court propriety.

Next in order of responsibility in this respect is the attorney. He is an officer of the court. His oath as such attorney requires him to "maintain the respect due to courts of justice and judicial officers." He is charged with a thorough understanding of the relations that should obtain between court and counsel and of the proprieties of court decorum. His conduct in court and his attitude towards the presiding judge should be such as to lend dignity to the court, and to inspire those less schooled in the amenities of court decorum with respect for the institution. True it is that the lawyer occupies something of a dual capacity. He owes a duty to his client and to the court, but the duty which he owes his client never requires him to go to the extreme of manifesting a contemptuous attitude towards the court. He should protect the interests of his client, but he should never forget that he is engaged in a serious undertaking—a search for the truth—and an effort to declare justice. He should not forget that he is one party to a controversy—a controversy conducted in an orderly and dignified manner, and

which must be decided by the court or jury. The law invests the court with power and authority to enforce an orderly and, dignified investigation, and it is the duty of the attorney to promote rather than frustrate an orderly investigation of the facts involved in the controversy. The law and the rules of court enable him properly to protect the interests of his client, without casting aspersions upon the learning or integrity of the presiding judge. He is entitled to make objections. He is entitled to exceptions to the rulings of the court. He is entitled reasonably to be heard upon questions presented for the decision of the court. The extent to which he shall be heard is a matter which must rest largely in the discretion of the presiding judge. He is not entitled to argue at length all petty and frivolous objections, but courts will always grant counsel opportunity of being heard upon doubtful and serious questions. However, when the court rules upon questions before it, it is the duty of counsel to respectfully acquiesce in such rulings. He owes no duty to his client which will justify him in indulging in flippant, sarcastic, or contemptuous comment upon such rulings. This practice on the part of attorneys is most reprehensible, and brings disrepute upon the institution which it is their sworn duty to respect.

With these principles in mind, let us examine the record in this case. The unpleasantness started when the court sought to protect a witness from what he deemed an unfair cross-examination. The temper of the cross-examination is plainly revealed by the question just preceding the interruption by the court. That question was: "You cannot swear that you saw the automobile moving at that time? How about answering that question?" This was a double and an unfair question. The question, "How about answering that question," was clearly in the nature of a taunt, and reveals the temper in which the cross-examination was being

conducted. It is a part of the duty of a trial judge to protect a witness from such treatment. In the third edition of Jones on Evidence (Horwitz ed.), § 815, it is said:

"Although to aid in the discovery of the truth reasonable latitude should be allowed for the cross-examination of witnesses, it is the plain duty of the court to interfere on objection or without, when the attempt is made by counsel to browbeat, insult, or to intimidate witnesses."

And again:

"From the necessity of the case, the method and extent of the cross-examination must depend very largely upon the discretion of the trial judge. . . . If the cross-examination . . . is being conducted in a manner which is unfair to the witness, or if it is inconsistent with the decorum of the court room, the court is not bound to wait for objections from counsel, but may interfere of its own motion." Sec. 842.

And further:

"Counsel have no right to inject into the cross-examination unfair insinuations upon the conduct of the witness or comments upon his testimony, and the court should not wait for objections before interfering with such a practice. It goes without saying that questions tending to insult, abuse, or intimidate the witness should not be permitted, and the court is not required to wait for objections to such mode of interrogation." Sec. 843.

In view not only of the power but the duty of the court, under the circumstances, the remark of the defendant that "I take exception to this undue interference with my cross-examination" was wholly and utterly unjustified and extremely improper and disrespectful. It was not said for the purpose of protecting the rights of his client. He had seriatim excepted to every remark made by the court during the colloquy. The court had ruled, and so far as the court was concerned the incident was closed. The remark of the

defendant charged the court with an undue interference with his cross-examination.   It was a gratuitous expression apropos of nothing pending before the court.   It was in the nature of a rebuke to the court.   It implied misconduct on the part of the court.   It was foreign to any duty which defendant owed his client.   It was but the result of defendant's disposition to have the last word in his controversy with the court.   This disposition appears from his statement, "But you ought not to be permitted to make statements without my answering them."

The printed record plainly reveals a most disrespectful attitude on the part of the defendant to the court.   We would have very little difficulty in construing this conduct as contemptuous upon the printed record alone.   But in addition to the printed record we have the finding of fact made by the court and preserved in the judgment of conviction that "said *Rubin* . . . with an arrogant, hostile, and defiant tone and manner, and casting looks in the direction of the jury box, obviously bespeaking sympathy or approval, and referring to rulings to which exceptions had been noted, made the following statement under guise of an exception no longer necessary : 'I take exception to this undue interference with my cross-examination.' "

By this finding we are bound.   "As a general rule, a reviewing court in contempt proceedings will not consider pure questions of fact, although it has been held that the findings by the lower court in contempt proceedings are not conclusive on appeal, but that the appellate court will give the same force to the trial court's findings in cases of contempt as in other cases where there is a conflict in the evidence, and that where there is evidence tending to show the guilt of defendant a finding of guilty will not be reviewed.   The court, however, may determine whether the alleged contemptuous conduct constitutes a contempt of law."   13 Corp. Jur. 104.   In

cases of direct contempt, where there is no trial and no evidence preserved, it is apparent that the finding of the trial court with reference to the attitude, temper, manner, and tone of voice of the contemnor must of necessity be binding upon the appellate court. The record thus made, and by which we are bound, enables us to arrive at the conclusion with little hesitation that the defendant was guilty of contempt of court, and properly punished.

Defendant complains that he was not accorded due process of law, and that proper procedure required that formal complaint be made against him and that he be given an opportunity to defend himself. He cites no authority going to any such extent and we have little hesitation in saying that none exists. Such has never been the practice of courts in dealing with direct contempt. Counsel cites cases requiring the entry of a formal order or judgment of conviction together with a statement of facts upon which the contemnor has been found guilty of contempt. This is a usual requirement, and this the court did in the instant case, and, in so doing, all formalities required either by statute or judicial precedent were complied with.

Sec. 256.04, Stats., provides that "Contempts committed in the immediate view and presence of the court may be punished summarily; in other cases the party shall be notified of the accusation and have a reasonable time to make his defense." This is but a legislative declaration of procedure that has always obtained in the courts. According to this, in cases of contempt committed without the view of the court, the party shall be notified of the accusation and have a reasonable time to make a defense. Not so, however, in cases of contempts committed in the immediate view and presence of the court. They may be punished summarily. The parties are not entitled to be notified of the accusation, nor a reasonable time in which to make their defense. Such

Rubin v. State, 192 Wis. 1.

has been the practice from time immemorial. Speaking on this subject in *Ex parte Terry,* 128 U. S. 289, 9 Sup. Ct. 77, the court says:

"It is undoubtedly a general rule in all actions, whether prosecuted by private parties or by the government, that is, in civil and criminal cases, that 'A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.' But there is another rule, of almost immemorial antiquity, and universally acknowledged, which is equally vital to personal liberty and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. It has relation to the class of contempts which, being committed in the face of a court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law. Blackstone thus states the rule: 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. But in matters that arise at a distance, and of which the court cannot have so perfect a knowledge, unless by the confession of the party or the testimony of others, if the judges upon affidavit see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him; or, in very flagrant instances of contempt, the attachment issues in the first instance, as it also does if no sufficient cause be shown to discharge, and thereupon the court confirms and makes absolute the original rule.' 4 Bl. Comm. 286." See, also, *Cooke v. U. S.* 267 U. S. 517, 45 Sup. Ct. 390.

In a note at p. 1052, Ann. Cas. 1915 D, vol. 38, the annotator declares that "the court may, on its own knowledge

of the facts, without further proof, without issue or trial (and without hearing an explanation of the motives of the offender), immediately proceed to determine whether the facts justify punishment, and to inflict such punishment as seems proper within the limits allowed by law." This procedure has also received the sanction of this court. *In re Rosenberg,* 90 Wis. 581, 63 N. W. 1065, 64 N. W. 299.

It may be conceded that this method of dealing with direct contempt is an anomaly in our law, which guarantees due process of law. However, it grows out of necessity and is deemed essential, in order to enable courts to preserve their existence and power and to confer upon society the rights which they are instituted to protect.

We take no pleasure in affirming this judgment. We assume that the trial court took no pleasure in pronouncing it. While the defendant reaps no satisfaction from a vindication of his conduct, he may take some comfort in the thought that he has afforded an opportunity for the discussion of a question which may serve as a reminder to those members of the profession who are disposed to "protest against arbitrary judicial conduct which is on the rise" of the true nature of the respect which is due from them to courts of justice and to judicial officers.

*By the Court.*—Judgment affirmed.