IN the MATTER OF the FINDING OF
CONTEMPT IN STATE of Wisconsin v.
Thomas M. DEWERTH:

Bruce CURRIE, Appellant-Petitioner,

v.

Honorable James B. SCHWALBACH, Circuit Court
Judge for Washington County, Respondent and
Cross-Petitioner.

Supreme Court

*No. 84–1811. Argued April 29, 1987.—Decided June 24, 1987.*

(Also reported in 407 N.W.2d 862.)

For the appellant-petitioner there were briefs by *Robert J. Lerner* and *Perry, First, Lerner & Quindel, S.C.,* Milwaukee, and oral argument by *Robert J. Lerner.*

For the respondent and cross-petitioner the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general, and oral argument by *James H. McDermott.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals[1] which affirmed in part and reversed in part an order of James B. Schwalbach, circuit judge for Washington

---

[1]*Currie v. Schwalbach,* 132 Wis. 2d 29, 390 N.W.2d 575 (Ct. App. 1986).

county, finding Bruce Currie (Currie) in contempt of court in the case of *State v. Thomas Dewerth* and remanded only for the purpose of affording him the right of allocution. We affirm the decision of the court of appeals.

On July 24, 1984, voir dire was conducted in the *Dewerth* case. In the course of voir dire, Currie, a panel member, was summarily found in contempt of court and ordered to pay a fine. The court of appeals affirmed the order but vacated the penalty and remanded the case to afford Currie an opportunity for allocution prior to imposition of the penalty. Because we find, consistent with the court of appeals decision, that use of the summary contempt procedure was proper, and also agree that Currie should have been accorded the right of allocution before contempt sanctions were imposed, we affirm the decision of the court of appeals.

Bruce Currie was summoned as a venire panel juror in the *Dewerth* case. Dewerth was charged with operating a motor vehicle while intoxicated. In the course of voir dire, Judge Schwalbach asked whether there was "anyone on the panel who has had any dealings with the Washington county District Attorney's Office of one sort or another." Currie stated that his brother had been "murdered by a drunk driver" and that his family had had dealings with the Washington county District Attorney's office. Judge Schwalbach then asked Currie whether his experiences had prejudiced him. Currie responded, "I don't like anybody in the Washington county District Attorney's Office."

Judge Schwalbach excused Currie. On his way out of the courtroom, he passed the defense table and said to the defendant, "I hope they hang you." Judge

547

Schwalbach immediately excused the jury panel. He directed Currie to remain in the courtroom. In response to the judge's inquiry, the court reporter stated that she had not heard Currie's remark. Judge Schwalbach said he had only heard a portion of what Currie had said because Currie was facing away from him at the time the remarks were uttered. He asked defense counsel to repeat what Currie had said. Defense counsel stated that Currie had said, "I hope they hang you," and that he had said it "with feeling and expression." Judge Schwalbach said that he heard "hang him."

Judge Schwalbach granted defense counsel's motion for a new jury panel. He then summarily found Currie in contempt of court and imposed a fine of $1,000.[2] Currie attempted to speak, but Judge Schwalbach warned him that his punishment might be increased if he did not keep quiet.[3] Judge Schwalbach then gave his reasons for summarily finding Currie in contempt:

> "You just blew close to $1,000 worth of county money by infecting this panel. You've just blown two days this court set aside to try this case. You just cost the defendant possibly additional attorney fees; I don't know because he's going to have to come back here, and you've now delayed the trial of this.

---

[2] The fine was later reduced to $500, which is the maximum permitted in a summary contempt proceeding. *See,* sec. 785.04(2)(b), Stats.

[3] The record reflects that the following exchange took place:

"MR. CURRIE: Have you ever had—
"THE COURT: Sir, you want to go to jail right now? You're just facing a fine; you keep fighting here, you'll find yourself in jail on a contempt sentence."

". . ."

"You're summarily held in contempt of court for the remark you made in the presence of the jury. I would like the record to show I did hear the words 'hang him.' I did not hear the entire remark because he was facing away. The record should reflect, I don't know how many of those actually in the back heard the entire remark. I'm sure those down at the end, close to Mr. Eisenberg's table were capable of hearing them, and certainly all the potential jurors in the back of the room were capable of hearing that remark because it was directed right at them as he went out."

Judge Schwalbach then asked Currie how much time he would need to pay the fine. Currie asked whether he could have a lawyer. Judge Schwalbach replied, "No, buster. This is summarital [sic], summarily occurred right in the presence of the Court." He told Currie that the fine was to be paid within sixty days. Currie again attempted to speak:

"MR. CURRIE: I got a question for you, sir. I was up here how many times in front of you, and you were aware of what our family has gone through in the past.

"THE COURT: I don't have the foggiest what your family went through.

"MR. CURRIE: It was in your court.

"THE COURT: I don't know what your family went through, sir, and I don't care in that regard; it doesn't excuse the remark. Okay. The case [Dewerth] will be rescheduled, Mr. Eisenberg. We'll contact you.

"A thousand dollars I want from you within 60 days."

Currie appealed Judge Schwalbach's order to the court of appeals. He argued that his behavior did not constitute contempt of court, that the trial court's findings were insufficient to support a conclusion that contempt had occurred, that the court had erred in employing the summary contempt procedure, and that he should have been accorded an opportunity for allocution. The court of appeals rejected all but the last of Currie's arguments. The court of appeals upheld the trial court's order but remanded the case "for purposes of an allocution proceeding wherein Currie will have an opportunity to make a statement in mitigation of his offense." 132 Wis. 2d at 32. Both parties petitioned this court for review.

It is Currie's contention that Judge Schwalbach should have employed the nonsummary contempt procedure, rather than the summary procedure. Chapter 785, Stats., outlines two procedures whereby a person may be found in contempt and punished. Nonsummary procedure involves the filing of a motion or complaint, notice, and a hearing or trial on the contempt charge, which sometimes must be held before a different judge. In essence, the contumacious act becomes the subject of a new proceeding. Summary procedure, on the other hand, takes place immediately after the contumacious behavior. Section 785.03 provides:

> "**785.03 Procedure.** (1) **Nonsummary procedure.** (a) *Remedial sanction.* A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

550

"(b) *Punitive sanction.* The district attorney of a county, the attorney general or a special prosecutor appointed by the court may seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs. 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.

"(c) *Joint hearing and trial.* The court may hold a hearing on a motion for a remedial sanction jointly with a trial on a complaint seeking a punitive sanction.

"(2) **Summary procedure.** The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

"(3) **Appeal.** A defendant aggrieved by a determination under this chapter may appeal in accordance with s. 809.30 if the proceeding was prosecuted by the state."

A trial court's finding that a person has committed a contempt of court will not be reversed by a reviewing court unless contrary to the great weight

and clear preponderance of the evidence. *In re Adam's Rib, Inc.,* 39 Wis. 2d 741, 746–47, 159 N.W.2d 643 (1968). Moreover, this court does not ordinarily re-examine the court of appeals' determination of the sufficiency of the evidence. *Winkie, Inc. v. Heritage Bank,* 99 Wis. 2d 616, 621–22, 299 N.W.2d 829 (1981). However, whether Judge Schwalbach proceeded under the proper subsection of the contempt procedure statute is a question of statutory construction. A question of statutory construction is a question of law. *Sacotte v. Ideal-Werk Krug & Priester,* 121 Wis. 2d 401, 405, 359 N.W.2d 393 (1984). In addition, to the extent that this court must engage in an interpretation of the language of the summary contempt statute, it is confronted with a question of law. This court decides questions of law independently, without deference to the trial court or court of appeals. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

Section 785.03(2), Stats., provides that the summary procedure may only be used if the following requirements are met: (1) The contumacious act must have been committed in the actual presence of the court; (2) the sanction must be imposed for the purpose of preserving order in the court; (3) the sanction must be imposed for the purpose of protecting the authority and dignity of the court; and (4) the sanction must be imposed immediately after the contempt.

There is no doubt that Currie's actions were committed in the actual presence of the court. Court was in session and Currie's remarks were addressed to, and heard by, those gathered in the courtroom for Dewerth's trial. Judge Schwalbach heard a part of Currie's remarks and was aware that Currie had

spoken. It is not required that the court hear the actual content of the entire contumacious remark before being permitted to utilize the summary contempt procedure.[4]

In addition, it is clear that Judge Schwalbach made the finding of contempt and imposed the punitive sanction "immediately after the contempt of court." After the contempt occurred, the judge took no further action to continue the trial of the *Dewerth* case other than to ask the jury panel to leave the room and to grant defense counsel's request for a new panel. This is not a case in which a judge has used the summary procedure to impose a sanction a few days, or even a few hours, after the contumacious act occurred. Judge Schwalbach engaged in no delay in finding that Currie was in contempt and in imposing the fine. All of the facts necessary to support these conclusions were found by the court of appeals to be supported by sufficient evidence.

Whether Judge Schwalbach properly used the summary contempt procedure is a question of law and turns on whether the sanction was imposed "for the purpose of preserving order in the court and protecting the authority and dignity of the court." Currie thus argues that the sanction was not necessary to preserve order in the courtroom because the miscon-

---

[4]Section 785.03(2)'s predecessor, sec. 757.04(1)(a), Stats. 1977, required the judge to have "seen or heard the conduct constituting the contempt." The change from this language to the "actual presence" language, as well as the change from the term "judge" (denoting the individual) to the term "court" (denoting the institution) indicates legislative intent that the contempt need only be committed in the courtroom while court proceedings are taking place.

duct had already occurred and the disorder was quelled—that summary contempt procedure may only be used where there is ongoing disruptive conduct.

The court of appeals in its opinion made this appropriate and sensible rejoinder to Currie's argument:

> "[W]e conclude that a prior disruption, presently quelled, is sufficient to permit the summary imposition of a punitive sanction.
>
> "... Currie argues that because his act of contempt was so effective as to terminate the proceedings, there was no more order in the court to preserve. We disagree. Contempts which are disruptive to the point of aborting the proceedings are the ultimate challenges to the orderly administration of justice and the ultimate form of disorder. We reject an interpretation of the statute which permits summary punishment of those whose conduct fails to cause such an end but forbids it against those whose conduct achieves it.
>
> "Moreover, absurd and illogical results would follow if we were to hold that an ongoing state of disorder or disruption must exist before a trial court may summarily proceed. For example, if Currie had engaged in continuous disruptive conduct, but not of a kind resulting in a termination of the proceedings, there is no question but that he could have been dealt with summarily. Yet where, as here, a momentary act of contempt is so effective, complete and devastating as to abort the entire proceedings, Currie's interpretation would require a nonsummary procedure.
>
> "It strikes us as patently unfair and illogical that a contemnor whose conduct does not abort the proceedings receives the summary end of the contempt stick with minimal or no due process, while the contemnor whose conduct is so disruptive

so as to abort the proceedings receives the benefits of the nonsummary procedure with its full panoply of constitutional rights." (Footnote omitted.) 132 Wis. 2d at 41–2.

We agree with the court of appeals that an interpretation of the contempt statute which permits summary punishment only where there is an ongoing state of disorder must be rejected. A contempt which consists of a single act that aborts the entire proceedings, necessitating postponement to another day, is no less a threat to order than a series of disruptive actions which result in the proceedings being briefly interrupted or which merely threaten to interrupt proceedings. As the court of appeals stated, the conduct which forces the termination of the proceedings is the ultimate contempt. It is the intent, content, and effect of the contumacious behavior, not its frequency, that is relevant. Contemnors whose actions require the court to abort the proceedings are not entitled to greater due process protections than contemnors whose conduct is less disruptive.

A requirement that the disruptive behavior consist of more than one act should not be read into the summary contempt statute. In addition, the "preserving order" requirement should not be interpreted as limiting use of the summary procedure to instances where an action's repetitive quality disrupts the proceedings. The content or substance of a single contumacious action or remark may be more disruptive than behavior which, irrespective of its content or purpose, disrupts intermittently because it is repetitive. Section 785.03(2), Stats., does not require that there be an ongoing disturbance or that the contemnor engage in a series of disruptive acts which will

continue unless the contemnor is punished. The court of appeals, as set forth above, expressed the point correctly and eloquently.

The statutory requirement that the finding of contempt sanction be for the purpose of protecting the court's authority and dignity was also satisfied. In *State v. Van Laarhoven,* 90 Wis. 2d 67, 69, 279 N.W.2d 488 (Ct. App. 1979), the brother of a man who had just been found guilty said to the jury, "[a]ll of you, you guys are stupid. I don't know how you can live with yourselves." The court of appeals affirmed the trial judge's use of the summary contempt procedure. It held that a compelling reason for vindication of a court's dignity and authority is established "when a jury is exposed to insulting remarks and actions within the courtroom." 90 Wis. 2d at 71. Likewise, where the defendant "is exposed to insulting re-marks," as occurred in the present case, there is a threat to the court's authority and dignity. Use of the summary procedure comported with the letter and spirit of the statute.

The court of appeals appropriately relied on the American Bar Association *Standards for Criminal Justice,*[5] which recommends that persons who engage in behavior which obstructs the orderly course of a trial be found in contempt. Standard 6–4.1 ("Inherent power of the court") provides:

> "The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assuring that the administration of criminal jus-tice shall not be thwarted. The trial judge has the

---

[5]The court of appeals used the 1980 edition, which is substan-tially the same as the 1986 edition, which we are utilizing herein.

power to cite and, if necessary, punish summarily anyone who, in the judge's presence in open court, willfully obstructs the course of criminal proceedings."

In addition, Standard 6–3.10 ("Misconduct of spectators and others") provides, in part, that:

"Any person who engages in conduct which disturbs the orderly process of the trial may be admonished or excluded, and, if such conduct is intentional, may be punished for contempt."

■ In this case, Judge Schwalbach found that Currie's behavior was a threat to the court's authority and dignity, as well as disruptive to courtroom order. Currie's remarks were uttered at a time when a reasonable person would have known that no right to speak existed. It is common knowledge that gratuitous, out-of-turn, berating, threatening, and derogatory comments are not permitted in the course of court proceedings. In addition, a reasonable person would know that one is not permitted to insult or demean the defendant, and that to do so would be a serious breach of courtroom decorum. Finally, the result of Currie's behavior was that the proceedings were aborted, the jury panel was dismissed, and the trial could not go forward that day as planned. The court of appeals correctly held that Judge Schwalbach's use of the summary procedure and the finding of contempt was sanctioned by the statutes.

However, it is asserted by Currie that the judge should have stayed the imposition of the penalty until Currie had the opportunity to speak. The court of appeals agreed and ordered that the penalty be vacated and that the cause be remanded so Currie

could speak in mitigation prior to the imposition of the penalty. We affirm that order.

Judge Schwalbach, however, contends that the court of appeals erred in holding that the case should be remanded in order to accord Currie the right of allocution. The court of appeals acknowledged that there are decisions which suggest that no such procedural safeguard is required even in a summary proceeding. *See,* 132 Wis. 2d at 45 (citing *Ex Parte Terry,* 128 U.S. 289, 309–10 (1888), and *Sacher v. United States,* 343 U.S. 1, 36 (1952)). Nevertheless, it found that "most contempt situations should allow for at least a modicum of due process or procedural safeguards." 132 Wis. 2d at 46. We agree.

Whether a right of allocution must be accorded in summary contempt cases is a question of first impression for this court.[6] However, both the general right of a person facing punitive sanctions to an allocution prior to sentencing and the summary contempt cases from other jurisdictions support the conclusion that a contemnor should be accorded a right of allocution

---

[6]Two older cases discuss the summary contempt procedure but are not dispositive of the issue. In *Rubin v. State,* 192 Wis. 1, 12, 211 N.W. 926 (1927), this court commented that no authority "require[s] that formal complaint be made against [a contemnor] and that he be given an opportunity to defend himself." However, in *Rubin,* the contemnor was, in fact, accorded the right of allocution before the court imposed contempt sanctions. 192 Wis. at 4–5. *In re Rosenberg,* 90 Wis. 581, 63 N.W. 1065, 64 N.W. 299 (1895), relied upon by the *Rubin* court for the proposition that a contemnor need be accorded no due process rights in summary proceedings (*see,* 192 Wis. at 14), involved remedial, not punitive, contempt sanctions. In *Rosenberg,* the contemnor was summarily found in civil contempt and imprisoned until he agreed to comply with a discovery order. Thus, Wisconsin precedent is distinguishable.

after being summarily found in contempt and prior to imposition of the sanctions.

In Wisconsin a criminal defendant has the right to make a statement before sentence. Section 972.14, Stats., expressly provides a right of allocution in criminal cases.[7] The most recent case to discuss the right of allocution, *Nicholas v. State,* 49 Wis. 2d 678, 683, 183 N.W.2d 8 (1971), "direct[ed] the trial courts to comply with statutory direction contained in sec. 972.14."

Because the summary contempt procedure involves imposition of a punitive sanction, not a remedial sanction, its purpose is, by definition, punishment.[8] The contemnor will be fined or ordered to be imprisoned in the county jail. Imposition of a punitive sanction is thus analogous to imposition of a sentence. The purpose of each is punishment, as distinguished from the purpose of a remedial contempt sanction, which is to terminate the contumacious behavior.

---

[7]Sec. 972.14, Stats., provides:

"Before pronouncing sentence, the court shall inquire of the defendant why sentence should not be pronounced upon him and accord the district attorney, defense counsel and defendant an opportunity to make a statement with respect to any matter relevant to sentence."

[8]In *Bloom v. Illinois,* 391 U.S. 194 (1968), a nonsummary criminal contempt case in which the contemnor's right to a jury trial was at issue, the United States Supreme Court found that contempt was a crime. It wrote, "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both.... [C]onvictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." 391 U.S. at 201. *See also, Gompers v. United States,* 233 U.S. 604, 610 (1914); *Codispoti v. Pennsylvania,* 418 U.S. 506, 516 (1974).

Therefore, it is appropriate that a contemnor should have the opportunity, similar to a criminal defendant, for allocution before punitive sanctions are imposed. The contemnor may well have something to say that mitigates, if not explains away, the contumacious act. This particularly is likely to be true where the contemnor is unfamiliar with the legal system and courtroom decorum. It is also possible, as the United States Supreme Court noted in *Groppi v. Leslie,* 404 U.S. 496, 505 (1972), that allocution may well reveal that the contemnor does not have the capacity or responsibility that would make sanctions appropriate.

The right of a contemnor who is found summarily in contempt to allocution is supported by the decisions of the United States Supreme Court, other federal courts, and other state courts. In addition, legal commentators recommend allowing the contemnor to speak briefly after being found in contempt.

In *Groppi v. Leslie,* 404 U.S. 496 (1972), the United States Supreme Court endorsed the right of allocution in both legislative and judicial contempt proceedings. It wrote:

> "The function of the contempt process by a legislative body is perhaps more related to deterrence of those disposed to create disorders than to restoring order. But the deterrence function can equally be served—perhaps even better—by giving notice and bringing the contemnor before the body and giving opportunity to be heard before being declared in contempt and sentenced.[7]
>
> "Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally

seen the offense and is acting on the basis of his own observations.[8] Moreover, in such a situation, *the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.* See *Levine v. United States,* 362 U.S. 610, 613–614 (1960); *Brown v. United States,* 359 U.S. 41, 52 (1959); *United States v. Sacher,* 182 F.2d 416, 418 (2nd Cir. 1950), aff'd, 343 U.S. 1 (1952)." (Emphasis supplied, footnotes omitted.) 404 U.S. at 504–05.

In footnote 7, the court stated:

"Under circumstances such as those in this case, neither a court nor a legislative body has any obligation to afford a contemnor a forum to expound his political, economic, or social views; *but this does not mean that some brief period to present matter specifically in defense, extenuation, or mitigation is not required.*" (Emphasis supplied.) 404 U.S. at 504.

Thus, the *Groppi* Court's decision reflects the assumption that, even in summary contempt cases, a contemnor will be given an opportunity to speak briefly in defense or mitigation of the contumacious behavior.

*Groppi* also discussed the reasons for according a right of allocution in contempt cases. The Court observed that, in the course of an allocution, "the putative contemnor might establish, for example, that it was a case of mistaken identity, or, also by way of affirmative defense, that he was mentally incompetent." 404 U.S. at 503. "It can be assumed," the Court continued, "that one so disoriented as not to appreciate the nature of his acts would not be punished for contemptuous conduct." *Id.,* n. 6; *see also,* 404 U.S. at 505. The Court also noted that "[m]odification of

contempt penalties is common where the contemnor apologizes or presents matter in mitigation." 404 U.S. at 506, n. 11.

Two years after the *Groppi* decision, the United States Supreme Court again discussed the right of allocution in contempt proceedings. In *Taylor v. Hayes,* 418 U.S. 488 (1974), the court reviewed a criminal contempt judgment against an attorney.[9] In the course of its opinion, the Court cited *Groppi* with approval, observing that, "Even where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.'" 418 U.S. at 498. The *Taylor* Court concluded:

> "These procedures are essential in view of the heightened potential for abuse posed by the contempt power. *Bloom v. Illinois,* 391 U.S., at 202; *Sacher* v. *United States,* 343 U.S., at 12. The provision of fundamental due process protections for contemnors accords with our historic notions of elementary fairness. While we have no desire 'to imprison the discretion of judges within rigid mechanical rules,' *Offutt* v. *United States,* 348 U.S., at 15, we remain unpersuaded that 'the additional time and expense possibly involved ... will seriously handicap the effective functioning of the courts.' *Bloom* v. *Illinois, supra,* at 208–209. Due process cannot be measured in minutes and hours or dollars and cents. For the accused contemnor facing a jail sentence, his 'liberty is valuable and must be seen as within the protection of the

[9]It appears that the contempt finding was summary, although it was delayed until the trial in which the contemnor has participated had been concluded. *See,* 418 U.S. at 789–93.

Fourteenth Amendment. Its termination calls for some orderly process, however informal.' *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972)." 418 U.S. at 500.

The *Taylor* decision also noted that the American Bar Association *Standards for Criminal Jutice* recommended that a right of allocution be accorded in all criminal contempt cases. *See,* 418 U.S. at 499 n. 8.

Other state courts have also held that a contemnor should be accorded a right of allocution in summary contempt proceedings. Some have based their decision on the premise that *Groppi* and *Taylor* require an allocution in summary contempt proceedings,[10] while others have relied on other rationales.

In *Alexander v. Sharpe,* 245 A.2d 279 (Me. 1968), an attorney challenged a court order finding him summarily in contempt. The Supreme Judicial Court of Maine, after noting that criminal defendants have the right to speak before a sentence is imposed, held that "more desirable practice would permit allocution in open court before sentence." 245 A.2d at 286. The *Alexander* court went on to find the contemnor had, in fact, been accorded a right of allocution. The Supreme Judicial Court of Massachusetts has held that "[e]specially in light of the potential for abuse of the contempt power, an adequate opportunity to defend or explain one's conduct is a minimum requirement before imposition of punishment." *Sussman v. Commonwealth,* 374 Mass. 692, 699, 374 N.E.2d 1195 (1978). And in *Town of Nottingham v. Cedar Waters, Inc.,* 118 N.H. 282, 286, 385 A.2d 851 (1978), the New

---

[10]*See, Sussman v. Commonwealth,* 374 Mass. 692, 699, 374 N.E.2d 1195 (1978); *Matter of Klecan,* 93 N.M. 637, 639, 603 P.2d 1094 (1979); *Ex Parte Martin,* 656 S.W.2d 443, 444–45 (Tex. Cr. App. 1982).

Hampshire Supreme Court observed that "[f]or direct criminal contempts to be punished summarily ... [t]he contemnor must be given an opportunity to speak in his defense."

In addition, there are cases involving summary contempt in which the reviewing court notes that a right of allocution, whether or not actually required, was accorded the contemnor. *See, Rubin v. State*, 192 Wis. 1, 211 N.W. 926 (1927); *Sacher v. United States*, 343 U.S. 1 (1952); *United States v. Wilson*, 421 U.S. 309, 312 (1975).

Judge Friendly discussed the importance of the right of allocution at length in *United States v. Galante*, 298 F. 2d 72 (2d Cir. 1962). He wrote that the right of a contemnor "to speak in explanation or extenuation" was fundamental. 298 F.2d at 76 (Friendly, J., concurring and dissenting). He concluded stating that "[h]owever unlikely it was that anything [the contemnor] or his counsel might have said would have altered the judge's determination, [he] was entitled to the opportunity, ... an argument ... might at least have led the judge to impose a lesser sentence." 298 F.2d at 78.

Standard 6–4.4 of the American Bar Association *Standards for Criminal Justice* ("Notice of charges and opportunity to be heard") recommends that "[b]efore imposing any punishment for criminal contempt, the judge should give the offender ... at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment." The commentary to Standard 6–4.4 recites:

> "Although there is authority that in-court contempts can be punished without notice of charges or an opportunity to be heard,[1] such a

procedure has little to commend it, is inconsistent with the basic notions of fairness, and is likely to bring disrespect on the court. Accordingly, notice and at least a brief opportunity to be heard should be afforded as a matter of course. Nothing in this standard, however, implies that a plenary trial of contempt charges is required.

---

[1]*Ex parte* Terry, 128 U.S. 289 (1888)."

We therefore conclude that an opportunity for allocution must be accorded in summary contempt proceedings. The requirement of an allocution comports with both the analogous statutory requirement that convicted criminal defendants be permitted to make a statement before being sentenced and with general due process concepts of fundamental fairness. As other courts have recognized, the allocution requirement provides a check on the heightened potential for abuse posed by the summary contempt power and provides an opportunity for the contemnor to apologize or to defend or explain the contumacious behavior.

The arguments which would deny a right of allocution in summary contempt cases are not soundly based, because they rely on cases that have been discredited or explained away in light of the growing awareness of courts that there is a requirement of fundamental fairness in the final disposition of an in-court contempt. Judge Schwalbach contends that *Ex Parte Terry,* 128 U.S. 289 (1888), controls this case.[11] In

[11]In *Terry,* the contemnor was an attorney who assaulted a United States marshal when the marshal attempted to carry out a

*Terry,* the Court discussed at length the history of the judicial contempt power, the need for such a power, and its absolute nature. *See,* 128 U.S. at 302–04. The Court "dismissed as immaterial" Terry's argument that he had not been given an opportunity to speak in his own defense. *Id.* at 306. "[T]he court was not bound to hear any explanation of [Terry's] motives, if it was satisfied, and we must conclusively presume, from the record before us, that it was satisfied, from what occurred under its own eye and within its hearing, that the ends of justice demanded immediate action, and that no explanation could mitigate his offence or disprove the fact that he had committed such contempt of its authority and dignity as deserved instant punishment," the *Terry* Court concluded. 128 U.S. at 309–10.

While *Terry* holds that there is no right of allocution in summary contempt cases, *Terry* no longer represents the position of the United States Supreme Court. *Terry* has been modified by *Groppi* and *Taylor.* It has been both distinguished and criticized.

*Terry's* holding appears to be in direct conflict with the *Groppi* statement that, even in summary contempt cases, "the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution." 404 U.S. at 504. It is difficult to square *Terry* with *Groppi's* discussion of the various circumstances under which an allocution would bring to light mitigating factors. 404 U.S. at 505, 506. The *Groppi* Court appeared to conclude that

judge's order to remove Terry's wife from the courtroom. After assaulting the marshal, Terry left the courtroom. After he left, the judge found him in contempt and imposed a six-month term of imprisonment.

*Terry* should be limited to its facts. After remarking that *Terry* "does not control this case," the *Groppi* opinion emphasized the fact that, in *Terry,* the contemnor had voluntarily absented himself from the courtroom and thwarted the right to allocution. 404 U.S. at 505.

Nor does *Terry* square with *Taylor's* approval of *Groppi. Taylor* additionally relies on the American Bar Association *Standards'* recommendation that allocution be accorded in all criminal contempt cases. The *Taylor* Court reproduced the commentary to this Standard in its entirety, including the portion referred to in this opinion criticizing *Terry's* approach to allocution as having "little to commend it." 418 U.S. at 499. Thus, even had the *Taylor* Court not implicitly criticized *Terry,* the American Bar Association *Standards* did so. The court of appeals correctly refused to follow or apply the *Terry* case.

Judge Schwalbach also argues that to accord a right of allocution is inconsistent with the exigent nature of summary contempt and to afford that right would violate sec. 785.03(2), Stats.'s, requirement that the judge impose the sanction immediately after the contempt of court. However, even when the opportunity for allocution is afforded, the punishment would still "immediately" follow the contempt in the sense that the court can stop the underlying proceeding immediately after the contempt and return to it only after the contemnor has been dealt with. In any event, it does not appear to be inconsistent with the requirement of immediacy to allow a contemnor to make a few brief statements.

Judge Schwalbach also contends that an allocution requirement will be a "trap" for judges. Because allocution is not mentioned in the statutory provision

outlining the summary procedure, he asserts they are unlikely to be aware that such a right must be accorded. We are confident, however, of the ability of the trial judges of this state to stay abreast of the developments of the law and to take note of the precedential decisions of this court and the court of appeals.

Judge Schwalbach failed to provide Currie an opportunity for an allocution. In fact, he went so far as to warn Currie that any attempt to assert the right to speak in explanation of his conduct might result in a jail sentence. This was clearly error and contrary to due process requirements that must be employed prior to the imposition of penalties for contempt.

We affirm the court of appeals in its holding that the penalty be vacated and the case be remanded to accord Currie his right of allocution. We consider the allocution that will take place on remand to be part of the original summary contempt proceeding. On remand, Judge Schwalbach has continuing jurisdiction over the matter. He has authority, after Currie's allocution, to vacate the original finding of contempt, to impose a different sanction, or to again impose the sanction that this court today vacates.

*By the Court.*—The decision of the court of appeals is affirmed.