IN the MATTER OF the FINDING OF
CONTEMPT IN STATE v. David LEMMONS:
Janet LEMMONS, Appellant,††

v.

RACINE COUNTY CIRCUIT COURT, Branch 3,
The Honorable Jon B. Skow, Presiding,
Respondent.†

Court of Appeals

*No. 87-2279-CR. Submitted on briefs December 21, 1988.—
Decided January 11, 1989.*

(Also reported in 437 N.W.2d 224.)

† Petition to review denied.
†† Petition for cross-review denied.

741

On behalf of the appellant, the cause was submitted on the briefs of *William A. DeMark,* of Racine.

On behalf of the respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *James H. McDermott,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Janet Lemmons appeals from an order denying her motion to dismiss two earlier findings of contempt which were summarily imposed by the trial court. We conclude that her actions on June 16, 1987, did not occur in the actual presence of the court, as required by sec. 785.03(2), Stats. The part of the order which refused to dismiss this finding of contempt is reversed. However, Lemmons' acts of June 17, 1987, provided an appropriate basis for using summary contempt procedures. Her voluntary departure from the courtroom after the contumacious acts did not affect the trial court's authority to summarily find her in

contempt later that afternoon when she voluntarily reappeared. That portion of the order is affirmed.

## FACTS

On June 16, 1987, Lemmons was a spectator at her husband's jury trial. During the proceedings, Lemmons walked out of the courtroom and hastened down the corridor where the witnesses had been sequestered. Visibly upset, she called the district attorney a "lying bitch" and threatened to sue. She then began to badger the witnesses with inquiries about their impending testimony. She was especially upset over the testimony of the initial witness, calling the witness a "lying bitch" and threatening physical harm.

Throughout Lemmons' tirade, a police officer, who was sitting with the witnesses, observed quietly. Upon recognizing the officer, Lemmons responded, "I guess I just really fucked up, huh?" While the court was recessed for lunch, the officer entered the courtroom and told the district attorney of Lemmons' actions. Lemmons interrupted, calling the district attorney and the initial witness liars. At the district attorney's request, a police report of the incident was prepared, but the trial court was not informed of Lemmons' actions at that time.

On June 17, during the district attorney's closing argument, Lemmons stood and exclaimed to the jury, "Oh, shit." She then left the courtroom and the building. Immediately after closing arguments, the trial court attempted to have Lemmons located to find her in contempt. At that time, during jury deliberations, the trial court was informed of Lemmons' actions the previous day. Lemmons was in court later that afternoon as the jury returned a verdict. After the verdict

743

was received, the court read into the record the police report of Lemmons' actions on June 16. The trial court summarily imposed contempt on Lemmons for her actions on June 16 and 17 but continued the matter until the following morning to permit Lemmons to retain counsel. She returned to court on June 18 without a lawyer and was sentenced to thirty days in jail and a $500 fine for her June 17 actions and fifteen days in jail and a $500 fine for her June 16 actions.

Lemmons, through an attorney, then filed a motion to dismiss the contempt findings. The motion was denied, and Lemmons appealed. We certified the appeal to the supreme court, and certification was refused.

## CONTEMPT OF JUNE 16

Lemmons argues that summary contempt procedures were inappropriate for her June 16 actions because the contempt did not occur in the presence of the court. She points specifically to the fact that the trial court did not know of the acts until June 17, and then only through a police report and statements by the district attorney.

Summary procedures for contempt are set forth in sec. 785.03(2), Stats., which provides:

**SUMMARY PROCEDURE.** The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

744

Here, there can be no doubt that Lemmons' outrageous actions on June 16 constituted a contempt of court by violating a direct order that she was not to have contact with the witnesses. Sec. 785.01(1)(b), Stats. However, whether her contumacious acts occurred in the presence of the court, thus allowing summary procedures, is at issue. *Currie v. Schwalbach*, 139 Wis. 2d 544, 407 N.W.2d 862 (1987) (*Currie II*), discussed the significance of the "actual presence" language.

> Section 785.03(2)'s predecessor, sec. 757.04(1)(a), Stats. 1977, required the judge to have "seen or heard the conduct constituting the contempt." The change from this language to the "actual presence" language, as well as the change from the term "judge" (denoting the individual) to the term "court" (denoting the institution) indicates legislative intent that *the contempt need only be committed in the courtroom while court proceedings are taking place.*

*Id.* at 553 n. 4, 407 N.W.2d at 866 (emphasis added).

The state seeks to distinguish the language in *Currie II* because that case involved conduct which indisputably occurred in the courtroom. Here, the trial court stated that its contempt finding for the June 16 acts was premised upon "the other proceedings outside of this courtroom ... dealing with the sequestered witnesses."[1] The state argues that the supreme court could not have intended to forbid the use of summary procedures when contempt occurs in chambers. The exact scope of the supreme court's comments in *Currie II* need not be decided in this case. However, under

---

[1]Neither party has discussed the significance of the exchange which took place in the courtroom during a recess. It appears, however, that this exchange was not used as a basis for contempt.

these facts, where none of the contumacious acts was made known to the trial judge until the following day, the acts cannot be said to have occurred "in the actual presence of the court."[2] Summary procedures were not designed for situations where the contumacious acts must be proven to the court by means of a day-old police report.

Because summary contempt procedure involves imposition of a punitive sanction, not a remedial sanction, its purpose is, by definition, punishment. *Id.* at 559, 407 N.W.2d at 869. The contemnor will be fined or ordered to be imprisoned in the county jail. *Id.* Imposition of a punitive sanction is analogous to imposition of a sentence. *Id.* Thus, punitive contempt in Wisconsin is akin to a criminal proceeding.

Despite the importance and abundance of constitutional rights which are traditionally accorded an accused in a conventional criminal proceeding, the law of punitive contempt recognizes the need for a court to address certain "emergency" situations in a summary manner. This power is limited to those instances where the authority and dignity of the court are threatened or impugned and the summary action is necessary for the preservation of order. Sec. 785.03(2), Stats. In this limited situation, the application of the United States Constitution is either literally suspended or significantly curtailed. *See Currie v. Schwalbach,* 132 Wis. 2d 29, 46, 390 N.W.2d 575, 582 (Ct. App. 1986) (*Currie I*), *aff'd,* 139 Wis. 2d 544, 407 N.W.2d 862 (1987). The most fundamental and routine rights which would normally

---

[2]This is consistent with an earlier Wisconsin case holding that misconduct in the presence of a deputy sheriff is not in the "presence of court." *Upper Lakes Shipping, Ltd. v. Seafarers' Int'l Union,* 22 Wis. 2d 7, 17, 125 N.W.2d 324, 330 (1963).

be accorded—notice of the charges, presumption of innocence, prosecutorial burden of proof, trial by jury, right to counsel, confrontation of accusers—all fall by the wayside in light of this need for expediency.

The law tolerates this extreme departure from conventional constitutional protection and procedure *only* because of its confidence in the fairness and ability of the presiding judge to accurately and fairly recount what has just occurred. *Id.* at 50, 390 N.W.2d at 583–84. In this setting, standard fact-finding procedure via a trial is abandoned. *Id.* A hearing in a formal sense is not necessary because the trial court has personally observed the offense and is acting on those observations. *Id.* at 36, 390 N.W.2d at 578; *Groppi v. Leslie,* 404 U.S. 496, 504 (1972).[3]

With these principles in mind, we conclude that the trial court's use of summary contempt procedures for assessing Lemmons' conduct in a courthouse corridor outside the personal presence of the judge was invalid. The trial court did not even know of Lemmons' conduct until it was reported via a written police report. The court did not and could not rely upon its own perceptions of the alleged conduct. Thus, the law cannot accord any credence to the court's assessment of Lemmons' contempt by summary procedure. The pro-

---

[3]In *Currie,* the trial judge had not heard all of the offending comment, but he did hear enough to know that a disturbance was created. *Currie v. Schwalbach,* 139 Wis. 2d 544, 552–53, 407 N.W.2d 862, 866 (1987) (*Currie II*). We do not read the supreme court's footnote regarding the "actual presence" language, *id.* at 553 n. 4, 407 N.W.2d at 866, to completely do away with the requirement that the trial court be contemporaneously aware, in some way, of the contemptuous behavior.

ceeding was a nullity as to this aspect of Lemmons' behavior.

Should the trial court wish to pursue a punitive sanction for Lemmons' actions, the nonsummary procedure of sec. 785.03(1)(b), Stats., must be followed.

## CONTEMPT OF JUNE 17

Lemmons argues that summary procedure was inappropriate for her acts on June 17 because the sanction was not imposed immediately nor was it for the purpose of preserving order in the court.[4] *See* sec. 785.03(2), Stats. She relies on *State v. Van Laarhoven,* 90 Wis. 2d 67, 279 N.W.2d 488 (Ct. App. 1979). *Van Laarhoven* involved a contemnor who was summarily found in contempt for making insulting remarks to the jury and immediately sentenced to ten days in jail. *Id.* at 69, 279 N.W.2d at 489. He responded with further remarks directed towards the court, was again found in contempt, and was sentenced to an additional twenty days. *Id.* The second contempt finding was reversed because summary procedures were not necessary to preserve order as the contemnor was already in the custody of the bailiff. *Id.* at 73, 279 N.W.2d at 490–91. These facts are substantially different from those before us.

■

Here, after making her comment, Lemmons left the courtroom and the building. A contemnor's voluntary departure will not defeat the ability of the court to act as soon as reasonably possible to punish the contempt. *Groppi,* 404 U.S. at 505 (citing *Ex parte Terry,* 128 U.S.

---

[4]Lemmons also raised this issue with respect to her June 16 acts. Because of our reversal of that portion on other grounds, we need not address her argument.

289, 310–11 (1888)). Furthermore, a prior disruption, presently quelled, is sufficient to permit summary procedures. *Currie II,* 139 Wis. 2d at 554, 407 N.W.2d at 866 (quoting *Currie I,* 132 Wis. 2d at 41, 390 N.W.2d at 580).

Lemmons will not be heard to complain of the one-day delay between being found in contempt and having sanctions imposed on her. She can claim no prejudice in receiving the opportunity to obtain an attorney before exercising her right of allocution.

**█**

The trial court's use of summary procedures to find Lemmons in contempt for a remark made earlier in the day, after which she absented herself from the proceedings, was proper. The portion of the trial court's order which denied Lemmons' motion to dismiss this finding of contempt is affirmed.

*By the Court.*—Order affirmed in part and reversed in part.