IN the MATTER OF CONTEMPT IN STATE of
Wisconsin v. Richard J. LEVIN:

Charles W. CASEY, Appellant,

v.

Honorable James L. CARLSON, Respondent.†

Court of Appeals

*No. 87–1456–CR. Submitted on briefs May 20, 1988.—Decided
August 3, 1988.*

(Also reported in 430 N.W.2d 718.)

† Petition to review denied.

On behalf of the appellant, the cause was submitted on the briefs of *William J. Tyroler,* assistant state public defender.

On behalf of the respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *James H. McDermott,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Charles W. Casey was found in summary contempt of court, pursuant to sec. 785.03(2), Stats., for failing to honor a subpoena and appear as a witness. On appeal, Casey raises the issue of whether the use of summary contempt procedure was proper under the facts and circumstances of this case. Because we conclude that the trial court's use of the summary contempt procedure in this case was improper, we reverse.

Casey was subpoenaed as a defense witness to testify in *State v. Levin,* a jury trial in Walworth county held on February 9, 1987. Casey did not appear. The one-day trial proceeded without Casey's testimony and Richard Levin was found guilty of operating after revocation, operating a vehicle while

167

under the influence of an intoxicant, and resisting an officer. The theory of Levin's defense was that Casey was the operator of the vehicle. Despite the potential materiality of Casey's testimony, the court denied a request for a continuance and a motion for mistrial by the defense.[1]

Casey voluntarily appeared in court the following morning. Under oath, Casey was questioned by the trial judge about his failure to appear on the previous day and about the events leading up to Levin's conviction. With respect to his failure to appear, Casey explained that he had been in Chicago to celebrate his birthday with his family and that his ride back to Wisconsin reneged at the last moment. Casey said he caught the first possible train back to Wisconsin but did not arrive at his home in Lake Geneva until approximately 4:00 p.m. the day of the trial. By that time, he testified that he believed the court was closed. With respect to the previous day's trial, Casey corroborated Levin's defense by testifying that indeed he was the driver of the vehicle. At the conclusion of this testimony, Casey was summarily found in contempt of court for his failure to appear as a witness. The bases for this finding were that Casey testified that he had material evidence and that the trial judge was not satisfied with Casey's explanation for his absence.

■

Whether a court has proceeded under the proper contempt statute is a question of statutory construction. Statutory construction is a question of law. *Currie v. Schwalbach,* 139 Wis. 2d 544, 552, 407 N.W.2d 862, 865–66 (1987). The requirements for

[1]This court, by unpublished opinion, reversed Levin's subsequent conviction and remanded for a new trial. *State v. Levin,* No. 87–0687–CR unpublished slip op. (Wis. Ct. App. Oct. 7, 1987).

using summary contempt procedure are: (1) the contumacious act must have been committed in the actual presence of the court; (2) the sanction must be imposed for the purpose of preserving order in the court; (3) the sanction must be imposed for the purpose of protecting the authority and dignity of the court; and (4) the sanction must be imposed immediately after the contempt. *Id.* at 552, 407 N.W.2d at 866. It is the first of these requirements which was not satisfied in this case.

The first requirement, that the contempt must be committed in the actual presence of the court, was explained in a footnote in *Currie*:

> Section 785.03(2)'s predecessor, sec. 757.04(1)(a), Stats. 1977, required the judge to have "seen or heard the conduct constituting the contempt." The change from this language to the "actual presence" language, as well as the change from the term "judge" (denoting the individual) to the term "court" (denoting the institution) indicates legislative intent that the contempt need only be committed in the courtroom while court proceedings are taking place.

*Id.* at 553 n. 4, 407 N.W.2d at 866. Here, the facts surrounding the nonappearance did not occur in the courtroom while proceedings were taking place, in contrast to *Currie* where a jury panel member made an inappropriate remark to the defendant in open court. *Id.* at 547, 407 N.W.2d at 864.

In a factually similar case in Maine, where "actual presence" is also required in summary contempt cases, a defendant was found in contempt for having failed to appear at a motion hearing. *Mitchell v. Flynn,* 495 A.2d 833, 834 (Me. 1985). In vacating the

criminal contempt imposed by the trial judge, the Supreme Judicial Court of Maine explained why the trial court's use of summary contempt to punish a witness for nonappearance was not proper:

> The justice, however, did not see or hear Flynn's conduct that resulted in Flynn's failure to appear at the January 4 hearing. The justice therefore did not have personal knowledge of all the facts and circumstances surrounding the alleged contempt, as is contemplated by Rule 42(a), and summary disposition of the contempt charge was improper.

*Id.* at 835.

Here, the trial judge had no personal knowledge about the facts and circumstances surrounding Casey's failure to honor his subpoena. Therefore, it was not proper to proceed by summary contempt. Under sec. 785.03(1)(b), Stats., Casey was entitled to all of the protections afforded a defendant under the criminal code, chs. 967 to 973, Stats., including the right of allocution and the right to a trial by jury.

Casey raises an additional issue of whether there was sufficient evidence to establish his nonappearance as intentional. Because the trial court used the summary contempt procedure, there was not an adequate hearing for fact-finding on this question of intent. Therefore, we do not reach this sufficiency issue and, instead, base our decision on procedural grounds.

In conclusion, under these facts summary contempt is not the appropriate procedure to deal with a witness who failed to appear. Bench warrants are an adequate mechanism for trial courts to ensure the appearance of subpoenaed witnesses. Sec. 968.09,

Stats. If punishment of a nonappearing witness is the desired goal, nonsummary contempt procedures must be used.

*By the Court.*—Orders reversed.