IN the MATTER OF the FINDING OF CONTEMPT
IN IN the INTEREST OF M.P.: John GOWER,
Appellant,

v.

CIRCUIT COURT FOR MARINETTE COUNTY, the
Honorable Charles D. Heath, Presiding, Respondents-
Petitioners. [Case No. 88-0740.]†

IN the MATTER OF the FINDING OF CONTEMPT
IN STATE v. Ricky LaFAVE: John GOWER,
Appellant,

v.

CIRCUIT COURT FOR MARINETTE COUNTY, the
Honorable Charles D. Heath, Presiding, Respondents-
Petitioners. [Case No. 88-0860.]†

Supreme Court

*Nos. 88-0740, 88-0860. Argued January 4, 1990.—Decided
March 8, 1990.*

(Also reported in 452 N.W.2d 355.)

†Motion for reconsideration denied without costs.

For the respondent-petitioner, The Honorable Charles D. Heath, the cause was argued by *James D. McDermott*, assistant attorney general, with whom on the briefs was *Donald J. Hanaway*, attorney general.

For the appellant there was a brief and oral argument by *Eric Schulenburg*, chief, appellate division state public defender.

CALLOW, WILLIAM G., J.   This is a review of an unpublished decision of the court of appeals reversing two orders of the Circuit Court for Marinette County, Judge Charles D. Heath, finding Attorney John Gower

(Gower) in contempt of court in the cases of *State v. LaFave* and *In the Interest of M.P.*

The sole issue presented on review is whether it was proper for the circuit court to use the summary contempt procedure, which is set forth in sec. 785.03(2), Stats., to find Gower in contempt of court for being tardy to two court appearances. We conclude that it was improper for the circuit court to use the summary contempt procedure to discipline Gower. If there are further proceedings, the matter should proceed under the nonsummary contempt procedure. We affirm the decision of the court of appeals.

We begin by setting forth the facts that are relevant to the resolution of the issue presented in this case. On December 5, 1986, Gower, an Assistant State Public Defender, arrived fifteen minutes late for a court appearance regarding the matter of *In the Interest of M.P.* Judge Heath was presiding. After Judge Heath cleared the courtroom, the following exchange took place:

THE COURT: Mr. Gower, you were 15 minutes late for the 10:30 matter. I have been as patient as I possibly can. It's such a pattern of conduct that it has to be dealt with.

Do you have any explanation for being late?

MR. GOWER: I was on the telephone . . . attempting to settle a traffic case . . . and that consumed approximately 20 minutes. I lost sight of the time.

THE COURT: Well, I don't think it's a legitimate excuse for not being here. Something has got to be done, Mr. Gower.

As I indicated, this has been a pattern of conduct that has commenced, I guess, from your arrival into Marinette. It got to the point where it was so bad, frankly, I started keeping track of the number of

4

times that you either failed to appear or were late. And I venture to say I list 20, 30 times. I don't need to go into them at this time, but it's got to stop. It's just too disruptive of everybody's calendar that's involved.

I propose to find you in contempt. Is there anything you care to say before I do so?

MR. GOWER: I don't think there's a thing I could say that would influence you with respect to the question, so I don't see any point in doing any more damage to my position than the record has already done.

After this exchange, Judge Heath found Gower in contempt of court for being fifteen minutes late on that day, for habitual tardiness, and for entirely missing some court appearances. Judge Heath imposed a two hundred dollar fine or ten days in jail; Judge Heath stayed the sanction, however, and gave Gower an opportunity to purge the contempt by being prompt for future court appearances. Gower was warned by Judge Heath that failure to be prompt would result in reinstatement of the sanction.

Subsequently, on March 11, 1987, Gower arrived fifteen minutes late for a court appearance before Judge Heath regarding the matter of *State v. LaFave*. After Judge Heath asked Gower for an explanation for his tardiness, the following colloquy occurred, during which Judge Heath displayed extraordinary patience and restraint:

MR. GOWER: I called at 9:30. I was in Green Bay all night.

THE COURT: You called here about 9:33. Three minutes after you were to be here you called.

5

MR. GOWER: Well, I can give you all sorts of excuses which, if I were in your position would be lame ones, relative to traffic and so on on the way up from Green Bay. But that's the fact. And I called immediately when I entered the house . . ..

THE COURT: Well, I can appreciate that.

MR. GOWER: And we left at eight o'clock by the way, sharp.

THE COURT: I believe that too. You say you left at eight. I believe that.

MR. GOWER: It's 54 miles.

THE COURT: But that does not excuse coming in late. If it were just an isolated incident now and then, that certainly is escusable [sic].

MR. GOWER: I think the track record substantially improved from about a year ago. That's my impression of things.

THE COURT: Well, it had for quite awhile. But now it's slipping again to the point where you're missing preliminary examinations, being 10, 15, 20 minutes late on a regular basis.

I don't know what we can do. I'm required to be here at the scheduled time. Everybody else is. I think you should be as well.

I have cautioned you in chambers. I have cautioned on the record. I have even gone so far as to order the courtroom deserted and at that time found you in contempt of court and stayed execution of it so it was not a matter of public knowledge. But I just can't let this go on anymore, Mr. Gower. I'm sorry. You can appreciate, I'm sure, how hard it is for me to do this because I haven't done it before. But I can't let this continue. I'm sorry. I really am.

6

MR. GOWER: The response I would prefer to give you would impact the problem.

THE COURT: Make it worse?

MR. GOWER: Um-hum. In terms of the sensory impression you have of the situation. Because I would take you on on the subject of the importance of punctuality.

THE COURT: Well, I see. That would make the matters worse.

MR. GOWER: Right.

MR. GOWER: I think life's too short.

THE COURT: There not being any adequate explanation given for your tardiness this morning, I am going to find you in contempt of court.

Judge Heath imposed a fine of one hundred dollars to be paid in thirty days or five days in the county jail for failure to pay. In addition, Judge Heath vacated the stay of the previous contempt order and directed Gower to pay the two hundred dollar fine or serve ten additional days in the county jail.

Gower appealed the two contempt orders finding him in contempt of court. After unsuccessfully attempting to certify the appeal to this court, the court of appeals determined that the appeal was proper for summary disposition because the outcome was controlled by *In the Matter of Contempt in State v. Levin,* 146 Wis. 2d 166, 430 N.W.2d 718 (Ct. App. 1988). Concluding that *Levin* required the case to be decided in Gower's favor, the court of appeals reversed, but noted that nonsummary contempt proceedings were available to control Gower-like behavior. This court accepted the circuit court's petition for review.

In this court, counsel for the circuit court argues that it was proper to employ the summary contempt procedure, rather than the nonsummary procedure, to impose punitive sanctions upon Gower for his tardiness. The summary and nonsummary contempt procedures are found in Chapter 785 of the Wisconsin Statutes. We are thus required in this case to determine whether the circuit court proceeded under the proper provision of the contempt procedure statute in imposing sanctions upon Gower for his conduct. Whether the circuit court proceeded under the proper provision of the contempt procedure statute is a question of statutory construction and thus a question of law. Moreover, to the extent we must interpret the language of the contempt procedure statute we are faced with a question of law. This court undertakes an independent review of questions of law. *Contempt in State v. Dewerth,* 139 Wis. 2d 544, 552, 407 N.W.2d 862 (1987).

The nonsummary contempt procedure, which is set forth in sec. 785.03(1), Stats., provides as follows:

**Procedure.** **(1)** Nonsummary procedure. (a) *Remedial sanction.* A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

(b) *Punitive sanction.* The district attorney of a county, the attorney general or a special prosecutor appointed by the court may seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the

complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs. 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.

(c) *Joint hearing and trial.* The court may hold a hearing on a motion for a remedial sanction jointly with the trial on a complaint seeking a punitive sanction.

The above statutory language shows that, under the nonsummary contempt procedure, a separate hearing or trial on the contempt charge is required. The hearing or trial is to be preceded by the filing of a motion or complaint and notice.

Summary contempt procedure, which is set forth in sec. 785.03(2), Stats., provides as follows:

(2) Summary Procedure. The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.[1]

---

[1]Section 785.03(3), Stats., provides that:

(3) Appeal. A defendant aggrieved by a determination under this chapter may appeal in accordance with s. 809.30 if the proceeding was prosecuted by the state.

The summary contempt provision makes it clear that the summary procedure, unlike nonsummary procedure, requires no new proceeding on the contempt charge. Rather, summary procedure occurs immediately after the offense; the summary procedure allows a judge to make a finding of contempt immediately after the offense occurs. Under summary procedure, therefore, findings of contempt are made without the procedural requirements of due process that attach in typical criminal prosecutions. Because summary contempt procedure, in the end, involves the imposition of punitive sanctions without the procedural safeguards normally accorded in criminal prosecutions,[2] summary procedure is properly used only under a limited set of circumstances. As stated in the Committee Comment—1979 to sec. 785.03, Stats. Ann. (1981), "[i]t is universally recognized that a court must be able to deal summarily with contempts committed in the actual presence of the court . . .. This power is very limited." *See also Harris v. United States*, 382 U.S. 162, 164 (1965) (construing Rule 42(a) of the Federal Rules of Criminal Procedure, the summary contempt provision in the federal system); *In re Yengo*, 84 N.J. 111, 417 A.2d 533, 539–40 (1980), *cert. denied*, 449 U.S. 1124 (1981) (construing the New Jersey summary contempt procedure provision); *Lemmons v. Racine County Cir. Court*, 148 Wis. 2d 740, 746, 437 N.W.2d 224 (Ct. App. 1989) (involving sec. 785.03(2), Stats.).

This court has construed the summary procedure statute (sec. 785.03(2), Stats.) as providing that sum-

_____

[2]However, a contemnor has a right of allocution after being found in contempt under the summary procedure and prior to the imposition of the punitive sanctions. *Dewerth*, 139 Wis. 2d at 568.

mary procedure may be used only if the following four requirements are met:

> (1)   [t]he contumacious act must have been committed in the actual presence of the court;

> (2)   the sanction must be imposed for the purpose of preserving order in the court;

> (3)   the sanction must be imposed for the purpose of protecting the authority and dignity of the court; and

> (4)   the sanction must be imposed immediately after the contempt.

*Dewerth,* 139 Wis. 2d at 552. Applying these requirements to the case at hand, we conclude that it was improper for the circuit court to find Gower in contempt of court under the summary contempt provision because Gower's tardiness was not an offense committed in the actual presence of the court.[3] In reaching this conclusion we examine the legislative intent behind the actual presence requirement, decisions from other jurisdictions addressing the same issue presented here, and case law from Wisconsin that, by analogy, assists in the resolution of the issue presented here.

Although the question of whether an attorney's tardiness constitutes an offense committed in the actual presence of the court is a question of first impression in this state, this court has been required, on many occasions, to determine whether certain conduct occurred in the actual presence of the court. This issue was before us most recently in the *Dewerth* case. In *Dewerth,* a potential juror was excluded for cause in a trial of a person

---

[3]Since the requirement that the act occur in the actual presence of the court is not met here, it is unnecessary for us to determine whether an attorney's tardiness meets the remaining three requirements.

charged with operating a motor vehicle while intoxicated. As he was passing the defense table on the way out of the courtroom, the excluded juror said to the defendant, "I hope they hang you." The trial judge stated that he heard only the words "hang him," and asked the defense counsel to repeat what the excluded juror said to the defendant. *Id.* at 547–48.

We concluded that the excluded juror's actions were committed in the actual presence of the court. We noted that the remark was made while the court was in session and was heard by and addressed to those present in the courtroom. Moreover, we noted that the trial judge heard a portion of the remark and was aware that the excluded juror had spoken. *Id.* at 552–53.

In deciding that the comment was made in the actual presence of the court, we found significant a recent change that had been made by the legislature to the language of the summary contempt procedure provision. Prior to the change, the summary procedure provision required the trial judge to certify on the record that the judge had "seen or heard the conduct constituting the contempt and that it [the contempt] was committed in the immediate view and presence of the court." Section 757.04(1)(a), Stats.(1977). The revised summary contempt statute replaced the term "judge" with the term "court" and required that the contempt must be committed in the actual presence of the court. We construed these changes to mean that the actual presence requirement is met when the contempt is committed in the courtroom while court proceedings are taking place. *Dewerth,* 139 Wis. 2d at 552–53 & n.4.

Of the state and federal courts that have addressed the issue of whether an attorney commits a contempt of court in the actual presence of the court when the attor-

ney is tardy for or completely absent from[4] a scheduled court proceeding, the majority position is that such conduct does not occur in the actual presence of the court.[5] Annotation, *Attorney's Failure to Attend Court, or Tardiness, as Contempt,* 97 A.L.R.2d 431, 435 (1964); *In re Yengo,* 417 A.2d at 541. In a decision sharing the majority view, *Jessup v. Clark,* 490 F.2d 1068 (3rd Cir. 1973),[6] the court was confronted with a situation in which an attorney entirely failed to appear for a scheduled court appearance. The court stated why an attorney's absence is not a contempt committed in the actual presence of the court. The court recognized that, at the commence-

---

[4]In our view, it makes no difference that the attorney was tardy or entirely failed to appear in terms of determining the appropriate contempt procedure to use.

[5]The minority position is that an attorney's absence or tardiness is contempt committed in the actual presence of the court. *See, e.g., In re Gates,* 478 F.2d 998 (D.C. Cir. 1973).

In addition to the majority and minority views, some courts have concluded that an attorney's tardiness falls into a category such courts characterize as a "hybrid situation." *See, e.g., In re Yengo,* 417 A.2d 533. Under the hybrid category, the trial judge determines the need for further proceedings depending upon the attorney's initial explanation for the absence or tardiness.

[6]In construing the "actual presence" requirement of the Wisconsin summary procedure provision, we find federal court decisions construing the "actual presence" requirement of Federal Rules of Criminal Procedure 42(a) particularly instructive because the Committee Comment explaining the 1979 changes to the Wisconsin contempt statute states as follows:

> The term "actual presence" is used rather than "immediate view and presence" as in prior s. 757.04(1)(a) (1977) because the former is consistent with Rule 42 of the federal rules of criminal procedure and the council's intent is to have the Wisconsin statute be in accord with the federal rule.

Committee Comment—1979 to sec. 785.03, Stats. Ann. (1981).

ment of the scheduled court proceeding, the trial judge could "see" that the attorney was not present; that is, the absence of the attorney was obvious to the court. However, the court noted that the trial judge's personal observations of events transpiring in the courtroom could not provide the trial judge with the information that was necessary to determine whether the absence was contemptuous—the reasons for the absence. Because the reasons for the attorney's absence were not apparent from the trial judge's personal observations of the courtroom, the contempt of court could not be said to have occurred in the actual presence of the court. In such cases, the court concluded, it was improper to find contempt under the summary procedure, and a plenary hearing was required. *Id.* at 1072–73.

The Ninth Circuit reached the same conclusion in *In re Allis*, 531 F.2d 1391 (9th Cir. 1976), *cert. denied*, 429 U.S. 900 (1976). In that case, the trial judge used the summary contempt procedure to find an attorney in contempt for being tardy to a scheduled court appearance. In concluding that an attorney's tardiness is not contempt committed in the actual presence of the court, the court reasoned as follows:

> Persuasive appellate court opinions have sustained the view that it is not counsel's absence from the courtroom at the appointed hour which constitutes the contempt, if any. The import of these cases is that the contempt consists not in the absence from the courtroom but in the reasons for the attorney's presence elsewhere, and the presence elsewhere was, of course, not in the actual presence of the Court.

*Id.* at 1392 (citations omitted). *See also Weiland v. Industrial Commission of Ohio,* 166 Ohio St. 62, 139 N.E.2d 36 (1956); *Taylor v. District Court for Fourth*

14

*Jud. Dist.,* 434 P.2d 679 (Alaska 1967); *State v. Ryan,* 59 Haw. 425, 583 P.2d 329 (1978).

As we have stated, the question of whether an attorney's tardiness is conduct committed in the actual presence of the court is a question of first impression in Wisconsin. However, in *Levin,* the court of appeals decided a similar question. In *Levin,* a key defense witness, who had been subpoenaed, failed to appear at the defendant's one-day trial. The defendant was found guilty of operation after revocation, of operating a vehicle while under the influence of an intoxicant, and of resisting an officer. The defense witness voluntarily appeared in court the day after the defendant's conviction. The trial judge questioned the witness about his absence the previous day and about the testimony he would have provided had he been present to testify. After hearing the responses of the witness,[7] the witness was found in contempt of court in summary fashion for failing to appear at the defendant's trial. *Levin,* 146 Wis. 2d at 167–68.

The court of appeals concluded that it was improper for the trial judge to use the summary contempt procedure to punish the witness for his conduct because the conduct occurred outside the actual presence of the court. The court of appeals cited this court's decision in *Dewerth* where we explained that the "actual presence" requirement means that the contempt must occur in the courtroom while court proceedings are taking place. *Id.* at 169. The court of appeals also cited a decision of the Supreme Judicial Court of Maine, *Mitchell v. Flynn,* 495 A.2d 833 (Me. 1985), in which it was held that the failure

---

[7]The witness explained that he failed to appear at the defendant's trial because of transportation difficulties. Had he appeared at the defendant's trial, the witness explained, he would have corroborated the theory of defense.

of a witness to appear is not a contempt committed in the actual presence of the court because the trial judge did not have personal knowledge of the witness's reasons for failing to appear. *Id.* at 169–70. After discussing the *Dewerth* and *Mitchell* decisions, the court of appeals concluded that the witness's conduct did not occur in the actual presence of the court because "the facts surrounding the nonappearance did not occur in the courtroom while proceedings were taking place" and because "the trial judge had no personal knowledge about the facts and circumstances surrounding [the witness's] failure to honor his subpoena." *Id.* at 169, 170.

In light of the foregoing discussion, we conclude that it was improper to use summary contempt procedure to punish Gower for being tardy. We hold that an attorney's failure to attend court at the scheduled time is not a contempt of court committed in the actual presence of the court as required by sec. 785.03(2), Stats. According to sec. 785.03(2), summary procedure takes place immediately after a contempt has occurred. The legislature clearly intended that the court's power to invoke the summary procedure is very limited. One requirement that must be met in order to use the summary procedure is that the contempt must have been committed in the actual presence of the court. The actual presence requirement is fulfilled when the contempt is committed in the courtroom while court proceedings are occurring. *Dewerth*, 139 Wis. 2d at 553 n.4.

The majority view is that tardiness of counsel is not a contempt committed in the actual presence of the court. Cases sharing the majority view correctly note that whether a contempt has occurred depends upon the reasons the attorney was elsewhere at the appointed time. The reasons the attorney was not in court at a

16

particular time are not based upon events occurring in the courtroom while court proceedings are taking place; therefore, attorney tardiness is not a contempt of court committed in the actual presence of the court.[8] The decision of the court of appeals in *Levin* supports this conclusion.

We recognize the difficulties tardy attorneys cause the courts. The law requires, however, that the conduct of tardy attorneys be handled under the nonsummary procedure statute.

*By the Court.*—The decision of the court of appeals is affirmed.

CECI, J., took no part.

---

[8]While the attorney may appear eventually and provide an explanation, as happened here, the fact remains that the contempt, if any, occurred outside the courtroom.