COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2021AP994**
**2021AP1186**

Cir. Ct. Nos. 2018FA296
2018FA296

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN RE THE FINDING OF CONTEMPT IN:
IN RE THE MARRIAGE OF JULIE C. VALADEZ V. RICARDO VALADEZ.

JULIE C. VALADEZ,

    APPELLANT,

  V.

THE HONORABLE MICHAEL J. APRAHAMIAN,

    RESPONDENT.

APPEALS from orders of the circuit court for Waukesha County: MICHAEL J APRAHAMIAN, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

¶1    GROGAN, J.[1]  Julie C. Valadez appeals from two contempt orders wherein the Honorable Michael J. Aprahamian found her in contempt on three occasions during post-divorce court proceedings.  Valadez argues that all three findings of contempt should be vacated.  First, she contends the circuit court acted without authority when it sua sponte scheduled a contempt hearing and found her in contempt for sending emails in violation of a prior court order.  Second, she contends the circuit court failed to follow proper procedure when it found her in contempt for objecting during a hearing and that the contempt finding for interrupting was clearly erroneous.  Third, she contends the circuit court erred both because it used an improper procedure to find her in contempt for not signing a release form[2] and because the resulting contempt finding was clearly erroneous.  For the reasons explained below, this court affirms in part, reverses in part, and remands with directions as set forth below.

## I. BACKGROUND

¶2    These matters arise following Valadez's divorce from her former husband, Ricardo Valadez.  In December 2020, Valadez emailed the circuit court ex parte.  The circuit court entered an order prohibiting Valadez "from sending emails to the judge" and warned that "[a]ny further contact with the judge by email will violate this Order and subject Ms. Valadez to a finding of contempt."

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The circuit court repeatedly used the term "waiver" in referring to the "Authorization For Use & Disclosure of Health or Confidential Information" form.  This court refers to it as a "release," as Valadez's signature authorizes the Waukesha County Department of Health and Human Services to release confidential information to the requestor.

In February 2021, Valadez emailed the judge with respect to transcript issues she was having with his court reporter. The judge printed the emails, filed them in the record, and entered a CCAP note that it was "ordering that Ms. Valadez show cause as to why she should not be held in contempt of the Court[']s prior orders prohibiting her from sending ex parte emails to the Court[.]" The judge set a hearing for March 18, 2021, to address the contempt and a notice of that hearing was issued.

¶3    On March 15, 2021, the Guardian ad Litem (GAL) from the divorce case sent a letter to the circuit court notifying it of issues related to one of the Valadez children and asked the circuit court to "clarify [the GAL's] appointment" at the March 18, 2021 contempt hearing. On March 17, 2021, the GAL sent another letter to the circuit court notifying it about concerns related to one of the Valadez children and "request[ed] that the Court immediately modify [the child's] placement to the home of his father where I will have access with [the child] to understand his mental health circumstances and can assess his well-being." The March 17 letter does not reference the March 18 hearing.

¶4    In regard to the March 15 letter, the circuit court entered a CCAP note that said: "**Reviewed by Judge Michael J. Aprahamian on 3/15/2021 - To be addressed at 3/18 hearing.**" No other notice was sent to the parties informing them that the circuit court reviewed the March 15 GAL letter or that it would be addressing it at the March 18 hearing.

¶5    At the March 18 hearing, the circuit court started the hearing by addressing the contempt. The court described what precipitated the hearing:

> I had issued an order on December 23rd of 2020.
> Paragraph 206 of that order states, "It is further ordered that
> Ms. Valadez is prohibited from sending emails to the judge.

> Any further contact with the judge by email will violate this order and subject Ms. Valadez to a finding of contempt."

> I received what appeared to be an email from Ms. Valadez on February 12. It was ex-part[e]. I was the only one copied on it and it forwarded emails she was having with the court reporter. And then I received another email on February 16 of 2020. One stating, again not copied to anyone else, do you supervise [the court reporter], please confirm.

> In response to that I had those filed and I issued an Order to Show Cause why she should not be held in contempt. [Counsel for Ms. Valadez],[3] I was going to ask Ms. Valadez if she sent those emails to me. Do you deny that she sent those emails to me?

Counsel responded, "No, Your Honor." The circuit court then said: "I'm going to find her in contempt. I think that was [a] willful and intentional violation of my prior Court order." The circuit court then said it would hear argument from counsel and give Valadez an opportunity to speak "in mitigation or explanation[.]"

¶6      Valadez's counsel explained:

> Unfortunately as Ms. Valadez's case was going on, there is an appeal issue and then there are transcripts ordered and she was having an issue with the transcripts. And she got a bill for the transcripts that she did not believe was fair.

> She tried to rectify it. She was trying to get in touch with the court reporter to get an itemization of the transcripts of the billing. And in essence she had ended up contacting Michael Neimon, the District Court Administrator's Office and asked them if he was the one supervising [the court reporter] and if he could help get that itemization.

---

[3] The State Public Defender's office (SPD) appointed counsel for Valadez on the email contempt. "Valadez's counsel" throughout this opinion refers to the SPD appointed contempt counsel. During the hearings described herein, Valadez was representing herself in the post-divorce proceedings.

> Mr. Neimon specifically told Ms. Valadez in an email on February 16 that [the court reporter's] supervisor is Your Honor and that she should be contacting this Court regarding any billing and such. So that she was under the impression that she was supposed to contact you and that is why she did that.
>
> I have had numerous conversations with her where I have expressed that she should not be emailing the Court ex-part[e] and she cannot be emailing the Court. She now knows that any kind of issues, that is stuff that needs to be e-filed with the Court record. She is a pro se individual who is kind of confused to all the little things that are required through the Court process. She now understands. She is sorry for emailing that and she'll do better in the future.

¶7     The circuit court then asked Valadez if she wanted to add anything, and she responded, "Not at this time, Your Honor." The circuit court then indicated it did not believe Valadez was confused, that its "order was crystal clear she should not be emailing me[,]" and that Valadez "willfully and intentionally" violated the court's order. The circuit court found Valadez in contempt, sentenced her to five days in jail, and stayed the jail sentence for thirty days to allow her to instead pay $250 or perform fifteen hours of approved community service.

¶8     The circuit court then dismissed Valadez's counsel as he was only representing her on the contempt—not in the post-divorce proceedings—and the circuit court wanted to address matters pertaining to the post-divorce proceeding. First, the circuit court indicated it would address Valadez's Petition for Waiver of Fees; however, Valadez voiced concern that she was not given notice that the circuit court would be addressing her Petition, which was a type of request the circuit court had not addressed in prior hearings. The circuit court agreed to "put it off" and then stated it would take up the GAL's "request for some emergency relief." This sparked additional concerns from Valadez, as she insisted she had not received notice the circuit court would be addressing the GAL's request at this

hearing. The transcript reflects the following exchange between the circuit court and Valadez:

> [MS. VALADEZ]: Your Honor, again is there a notice for hearing?
>
> THE COURT: There was the notice that came out with the [GAL] letter and I'm going to address it because it's a request for emergency relief --
>
> [MS. VALADEZ]: Just to clarify what was the notice? What was the notice of a hearing? I just don't understand what is being addressed.
>
> THE COURT: Well, when the first letter came out on March 15th of '21, I responded on CCAP saying we will address that at the March 18 hearing.
>
> [MS. VALADEZ]: I don't have any -- was that sent in a notice? I don't have any notice.
>
> THE COURT: It's on CCAP I believe.
>
> [MS. VALADEZ]: I don't get notice.
>
> THE COURT: Yes, you do. You're an e-filer. Are you saying you are not an e-filer?
>
> [MS. VALADEZ]: E-file gives notices of when something is filed into the record.
>
> THE COURT: All right. I'm proceeding today because we -- this is an emergency situation that relates to [child] E[.]--
>
> [MS. VALADEZ]: Your Honor --
>
> THE COURT: -- I received -- excuse me, I'm talking, Ms. Valadez. I received a letter on March 15th and it was a letter by the Guardian ad Litem identifying certain issues that are happening with [child] E[.]
>
> I stated in response to that letter that I reviewed it on that same day and I said to be addressed at the 3-18 hearing. I received --
>
> [MS. VALADEZ]: Your Honor --

6

THE COURT: -- yesterday from … the Guardian ad Litem identifying more urgent and immediate concerns regarding [child] E[.]

So I have jurisdiction to address matters relative to the best interests of the child particularly when there is an emergency situation. I'm going to address it. You are free to participate, Ms. Valadez, but I'm going forward whether you like it or not.

[MS. VALADEZ]: Well, I just want to understand because so you are saying the note that you put in CCAP for clarifying authority that's what you're addressing today, there is no other motions or notices for hearing so I just want to be clear what you're addressing.

THE COURT: I'm addressing based on the letter I received on the 15th that I said I would review that at the March 18 hearing as well as the letter that came in yesterday. You received those letters, didn't you, Ms. Valadez?

[MS. VALADEZ]: Yes. I received letters but no response of whether it would be a hearing to prepare for a hearing.

THE COURT: And you received contact from [the GAL] attempting to get your cooperation to deal with [E.], correct?

[MS. VALADEZ]: Well, I -- I'm asking about it at this hearing.

THE COURT: I'm asking you a question. You were contacted by the Guardian ad Litem to address concerns regarding your son E[.] and you were not cooperating with her, correct?

[MS. VALADEZ]: That's incorrect. That is incorrect, Your Honor.

THE COURT: All right. So I did receive those letters and the request --

[MS. VALADEZ]: Is this a motion hearing, Your Honor, you haven't clarified.

THE COURT: I'm interpreting these letters as a motion, an emergency motion to deal with E[.] because he seems to be --

7

[MS. VALADEZ]: And is there a notice of this being a motion hearing?

THE COURT: I told you what the motion is. We're moving forward, Ms. Valadez. If you interrupt me one more time, I'll hold you in contempt again and I will not stay it. Stop interrupting me.

I told you I'm going forward. If you want to participate you are here. I would think as a mother you would be interested in what's in the best interests of E[.]

[MS. VALADEZ]: Your Honor, as the judicial code I request there be respectful communication in the hearing.

THE COURT: This is respectful communication, Ms. Valadez. You're interrupting me.

[MS. VALADEZ]: I -- made my objection.

THE COURT: You made your objection. I overruled the objection. I said I'm moving forward.

[MS. VALADEZ]: I hadn't made an objection yet because I was asking for clarification. I don't even have a notice of what this hearing is.

THE COURT: You have both of the letters from [the GAL].

[MS. VALADEZ]: Those are letters -- I -- I have received no motions.

THE COURT: I'm presenting them as a motion given the emergency circumstances regarding E[.] [GAL], let me hear from you.

[GAL]: Judge, just for clarity, too --

[MS. VALADEZ]: Your Honor, I object to the Guardian ad Litem speaking in this case.

THE COURT: Okay.

[MS. VALADEZ]: As the statement is for clarification of her role.

THE COURT: Her role, she was appointed Guardian ad Litem September 25th of 2020. As part of that appointment, she was going to be involved in the appeal as

8

well as any issues on-going during the pendency of the case. I said that specifically --

[MS. VALADEZ]: Your Honor, can you please clarify what was presently before the Court when you entered that into the clarification.

THE COURT: -- issues regarding the two of you and your children. That have essentially special needs. And I knew there would be issues coming up and I appointed -- I appointed [the GAL] at that time. And I made it clear what was her role, Ms. Valadez. If you interrupt me one more time I'm holding you in contempt and every hearing we're having after this is going to be in person. [GAL], give me an update.

[GAL]: Judge --

[MS. VALADEZ]: I object, Your Honor, to --

THE COURT: Ms. Valadez, I'm holding you in contempt. We're having a hearing now. I've given you two warnings. I've already held you in contempt for violating my prior order sending me emails --

[MS. VALADEZ]: Your Honor --

THE COURT: -- and you keep interrupting. I've interpreted your question as an objection. I overruled the objection specifically --

[MS. VALADEZ]: Your Honor --

THE COURT: -- and now you continue to interrupt. I'm holding you in contempt.

[MS. VALADEZ]: I am --

THE COURT: I'm going to sanction --

[MS. VALADEZ]: I am --

THE COURT: Quit interrupting me, Ms. Valadez. I'm holding you in contempt again another five days. Do you have anything you want to say in mitigation or explanation?

[MS. VALADEZ]: What -- am I able to participate? I have a right to object, correct?

9

THE COURT: Is that your statement? Is that your statement? Is that your statement in [al]locution that you have a right to object? Anything else you want to say?

[MS. VALADEZ]: I don't understand what you are asking me, Your Honor.

THE COURT: I'm holding you in contempt for willful, intentional violation of my directive to stop talking while I conduct this hearing and you continually interrupt. Is there anything you want to say?

[MS. VALADEZ]: Your Honor, I said I object. When [the GAL] began to speak, I objected to [the GAL]. Do I have a right to participate in the hearing?

THE COURT: Anything else you want to say?

[MS. VALADEZ]: Can I ask that question as under the judicial code for judicial conduct I have a right to ask for clarification for legal proceedings. I'm asking for clarification.

THE COURT: And I gave you the clarification, Ms. Valadez, and you kept continuing to interrupt me. Anything else you want to say by way of mitigation or [al]locution with respect to the contempt?

[MS. VALADEZ]: But my understanding --

THE COURT: Anything else you want to say, Ms. Valadez?

[MS. VALADEZ]: Yes. I'm understanding you to be saying I objected to [the GAL]. That's what you're addressing right now.

THE COURT: And I overruled your objection and I want to hear from her now.

[MS. VALADEZ]: I didn't hear you say I'm overruling the objection. You said a contempt.

THE COURT: Anything else?

[MS. VALADEZ]: Don't I have the right to provide grounds for the objection?

THE COURT: Anything else you want to say?

10

[MS. VALADEZ]: Can you answer that, do I have -- do I have the ability to --

THE COURT: Ms. Valadez stop talking. I'm holding you in contempt.

¶9 The circuit court then imposed a sanction of five days in jail, stayed for thirty days, and allowed Ms. Valadez the option to pay $500 or perform fifteen hours of approved community service. The hearing proceeded with the GAL giving the circuit court an update. Ultimately, the circuit court granted the GAL's request that E. be turned over to his father later that day and set a hearing to determine whether all four children should be placed with their father instead of the current placement schedule where the children spent alternating weeks with each parent. The circuit court said: "Mr. Valadez is going to pick up E[.] and you're not going to have placement with E[.] until I say that you can." The circuit court issued a written contempt order reflecting its two contempt findings.

¶10 Valadez's counsel filed a motion seeking reconsideration on the contempt finding arising from the emails. The motion alleged that the circuit court failed to comply with the contempt statutes in WIS. STAT. ch. 785 because the contempt was initiated by the circuit court sua sponte rather than by one of the parties, a prosecutor, the attorney general, or a special prosecutor. *See* WIS. STAT. § 785.03(1)(a), (b). The circuit court denied the motion, ruling that it had "inherent power to hold in contempt those who disobey the court's lawful orders" and that this authority exists independent of the statutes. Valadez filed a pro se motion to reconsider the second contempt finding, which the circuit court also denied. Valadez appealed from the court's orders.

¶11 On June 2, 2021, the circuit court held a status conference in the ongoing post-divorce proceeding. Valadez expressed concerns about the GAL,

both that she was reporting factually incorrect information to the court and that she was ignoring police body camera video of E. screaming for help. Valadez expressed wanting to "establish normalcy" for her children.

¶12 The circuit court then heard from the representative from Family Court Services with regard to the status of the court-ordered custody evaluation. The representative reported that Valadez had not been cooperative in scheduling a meeting and would not sign a release needed to obtain confidential records from the Department of Health and Human Services (DHHS). Valadez told the court she did not think the representative needed a release from her and believed the court should finish the emergency hearing because: "If there is no emergency once you see the evidence then there is no need for anything further. There is no need for custody evaluation if there is no emergency."

¶13 The circuit court ordered Valadez to "sign the release" and "schedule an appointment." Valadez responded: "I don't believe I have a legal obligation to.… I think I have a legal right I can decline and ask for an evidentiary hearing." Valadez later said she had no issue signing the release but wanted "to get legal counsel." Then the following exchange occurred:

> THE COURT: I'm ordering you to sign it right now. If you are not going to sign it the bailiff is going to take you into custody until you do.
>
> MS. VALADEZ: I don't have an opportunity to get legal counsel?
>
> THE COURT: Here is your legal counsel right there.
>
> MS. VALADEZ: Not on this matter, Your Honor.
>
> THE COURT: He is because you're about to be held in contempt and brought into custody for failure to follow my order to sign that waiver.

MS. VALADEZ: I don't even know what this waiver is for.

….

MS. VALADEZ: Can you cite a law for me, Your Honor, that I have to sign something that I don't know what it is regarding?

….

THE COURT: What is the waiver that you are asking her to sign?

[FAMILY COURT REPRESENTATIVE]: It's a release of information for Health and Human Services records. Mr. Valadez has already signed for himself and for the children as the parent with sole legal custody. Human Services has contacted me and said they don't have a release from Ms. Valadez because I haven't met with her yet so I didn't have an opportunity to provide one.

   This is a release of information so I can get records from Health and Human Services. She previously signed one during my original custody study and I got those records but it expired. I need a new release to get all the records that have happened since we were last in court.

¶14    The circuit court then asked the representative why those records were needed. The representative explained the release was needed to review the records of "multiple calls to Human Services regarding abuse and neglect claims, regarding getting services for the children" and that Valadez had signed the same form in the previous investigation. The circuit court asked the representative if it was the regular "custom and practice to review those files" in an investigation like this. The representative responded affirmatively.

¶15    After some additional discussion, the circuit court asked Valadez's counsel (who happened to be in the courtroom) to talk to Valadez about "signing of the waiver." After a recess, Valadez's counsel stated:

13

> As probably everyone knows I'm not a family law attorney, I don't know family law. I can't really advise her on whether signing that release is something that should happen because I have no idea. So I just want to make it clear this is not my expertise … I don't have the ability to advise her on whether to sign that.
>
> Her basis is that she doesn't feel this is a legal order, that she is saying the Court doesn't have the ability to do this kind of order and I have no ability to advise her on that. I just want to make the Court aware of that.

The circuit court then said its "order is going to be the order I make right now" and subsequently ordered Valadez to sign the release form, explaining:

> I think it's fair and reasonable, in the best interests of the children for them to do an investigation and to make a recommendation to the Court. They need information to do so. I believe the information they're requesting is reasonable and appropriate for them to conduct their investigation and make their recommendation. I am ordering you to sign the waiver. The order is right now. Are you going to follow that order?

Valadez responded that she requested the "termination of the emergency hearing" and that she had not "even been able to present one fact of evidence or one witness." The circuit court said the hearing would be scheduled and asked Valadez again if she was "going to follow my order and sign the waiver?" Valadez responded: "I'm requesting to sign it after the termination of the emergency hearing." The circuit court's response was:

> THE COURT: Okay. It's June 2nd, 2021. We've had a hearing here in Branch 9 in regular session Court for a status in the Valadez action. Ms. Valdez [sic] did then and there, in open Court, in the immediate view of and in the presence of the Court, engage in disorderly, contemptuous, and insolent behavior, directly tending to interrupt the Court's proceedings and to impair the authority and dignity of this Court.
>
> In saying that what Ms. Valadez did was violate my direct order to have her sign the waiver that she was

14

> requested by [the family services representative] to sign
> several times and after finding that the order was
> reasonable and appropriate and the request for the waiver
> was reasonable and appropriate, I made the order for her to
> sign it. She refused to sign the order.
>
> The disorderly, contemptuous and insolent behavior of
> Ms. Valadez has, beyond a reasonable doubt, seriously
> destroyed the order, authority and dignity of this Court and
> must be dealt with under the Court's inherent statutory
> powers to summarily punish such conduct.
>
> I am finding you in contempt of Court. You have a right
> of [al]locution.

¶16    The circuit court then asked Valadez's SPD lawyer if he wanted to "advise her of her right of [al]locution and to purge her contempt by signing the waiver?" Valadez's lawyer responded: "First off, I would request that a contempt hearing be adjourned so I can research this issue. And I would like just a brief moment to talk to my client now." The circuit court refused the request to adjourn and then asked if Valadez signed the release. Valadez signed the release and her lawyer told the court she hoped "that would purge the contempt issue." The circuit court then gave Valadez an opportunity to speak. After she said, "I don't believe that you should punish me for the contempt[,]" the circuit court responded:

> I do find that by signing the waiver as requested and
> ordered that she's purged the contempt and I'm not going
> to sanction her by having her taken into custody.
>
> She had additional advice from [her lawyer]. I thought
> he gave the same advice prior to that. But in any event,
> he's given her the advice and she went off and signed the
> waiver as ordered. I find that that purges the contempt.

¶17    The circuit court subsequently issued a written order and Valadez appealed from it. Valadez filed a motion requesting consolidation of the two contempt orders for purposes of appellate briefing and disposition. This court granted consolidation by order dated July 14, 2021.

15

## II. DISCUSSION

¶18    Valadez contends the circuit court erred in finding her in contempt on three separate occasions.  She asks this court to vacate all three contempt findings either because the findings were clearly erroneous or because the circuit court failed to follow the contempt statutes.  For ease of reference, this court refers to the first contempt finding as the "email contempt," the second contempt finding as the "interrupting contempt," and the third contempt finding as the "release contempt."  The email contempt and the interrupting contempt are contained in the circuit court's first order and the release contempt in the second order.

¶19    As material to this appeal, a "'[c]ontempt of court' means intentional: (a) Misconduct in the presence of the court which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court; [or] (b) Disobedience, resistance or obstruction of the authority, process or order of a court[.]" WIS. STAT. § 785.01(1)(a), (b).  There are two types of contempt procedures:  "nonsummary" and "summary." WIS. STAT. § 785.03(1), (2).  Section 785.03(1) controls imposition of a nonsummary contempt sanction and § 785.03(2) controls imposition of a summary contempt sanction.[4]  Nonsummary procedure requires "a separate hearing or trial on the contempt charge." ***Gower v. Circuit Ct. for Marinette Cnty.***, 154 Wis. 2d 1, 9, 452 N.W.2d 354 (1990).  A summary contempt procedure is used for addressing contempt that occurs "in the courtroom while court proceedings are taking place."

---

[4]  As set forth in WIS. STAT. § 785.03(1), the nonsummary procedure provides for either a remedial sanction or a punitive sanction.  The summary procedure involves solely punitive sanctions.  Sec. 785.03(2).

16

*Id.* at 12 (citing ***Currie v. Schwalbach***, 139 Wis. 2d 544, 552-53 & n.4, 407 N.W.2d 862 (1987)).[5]

¶20    In reviewing a circuit court's contempt finding, this court upholds findings of fact underlying a contempt finding if those findings are not clearly erroneous. ***Shepard v. Circuit Ct. for Outagamie Cnty.***, 189 Wis. 2d 279, 286, 525 N.W.2d 764 (Ct. App. 1994). However, whether the circuit court properly followed the contempt statute involves interpretation of WIS. STAT. ch. 785 and thus presents a question of law this court reviews independently. ***Gower***, 154 Wis. 2d at 8.

### A. *Email Contempt*

¶21    Valadez seeks vacatur of the email contempt because the nonsummary contempt statute does not authorize a circuit court to sua sponte initiate the contempt proceeding—even if that person violated a court's order. The Respondent[6] does not dispute this point. Instead, he contends the email contempt finding is authorized under the circuit court's inherent authority.

¶22    Although the Respondent is correct that courts have inherent authority deriving from the Wisconsin Constitution, *see* ***State v. Schwind***, 2019 WI 48, ¶¶12-14, 386 Wis. 2d 526, 926 N.W.2d 742, "[f]or over one hundred

---

[5] ***Currie v. Schwalbach***, 139 Wis. 2d 544, 407 N.W.2d 862 (1987), is also sometimes cited as ***State v. Dewerth***, as was the case in ***Gower v. Circuit Ct. for Marinette Cnty.***, 154 Wis. 2d 1, 8, 452 N.W.2d 354 (1990). This court will use ***Currie v. Schwalbach*** throughout this opinion.

[6] Judge Aprahamian is represented by the Wisconsin Department of Justice. This court uses the term Respondent for ease of reference.

twenty years … the Wisconsin Supreme Court has recognized legislative regulation of the contempt power, and the court has proscribed the exercise of this power outside of the statutory scheme," *Evans v. Luebke*, 2003 WI App 207, ¶17, 267 Wis. 2d 596, 671 N.W.2d 304. *See also* *Frisch v. Henrichs*, 2007 WI 102, ¶32, 304 Wis. 2d 1, 736 N.W.2d 85 ("A court's power to use contempt stems from the inherent authority of the court. The power may, however, within limitations, be regulated by the legislature." (citation omitted)); *id.* ("Despite the fact that the power exists independently of statute, this court ruled … that when the procedures and penalties of contempt are prescribed by statute, the statute controls." (citation omitted)); *State ex rel. Lanning v. Lonsdale*, 48 Wis. 348, 367, 4 N.W. 390 (1880).

¶23 The contempt statutes in WIS. STAT. ch. 785 provide for procedures and penalties and therefore govern the circuit court's contempt power. The nonsummary contempt procedure under WIS. STAT. § 785.03(1) is initiated either by "[a] person aggrieved by a contempt of court" "filing a motion," § 785.03(1)(a) (remedial sanction), or by a "district attorney of a county, the attorney general or a special prosecutor appointed by the court" "issuing a complaint charging a person with contempt of court," § 785.03(1)(b) (punitive sanction). The "aggrieved person" for a remedial sanction must be "someone other than the trial court." *Evans*, 267 Wis. 2d 596, ¶23 (citation omitted).

¶24 The email contempt falls under the nonsummary statute and the circuit court should have complied with its requirements. Although the circuit court here was clearly frustrated by Valadez's violation of its December 2020 order prohibiting her from emailing it ex parte, the circuit court was not without recourse to address the violation of its order. The circuit court could have directed

the "district attorney to prepare a complaint, thus setting the procedural framework into motion[.]" *See* ***B.L.P. v. Circuit Ct. for Racine Cnty.***, 118 Wis. 2d 33, 40, 345 N.W.2d 510 (Ct. App. 1984); *see also* ***Diane K.J. v. James L.J.***, 196 Wis. 2d 964, 970, 539 N.W.2d 703 (Ct. App. 1995). The circuit court could also have appointed a special prosecutor as necessary. *See* ***B.L.P.***, 118 Wis. 2d at 40. Thus, the contempt statute provided recourse to address Valadez's violation, and the circuit court should have followed the statutory nonsummary contempt procedure. Because the circuit court did not comply with the statute, this court vacates the email contempt finding, reverses that part of the first order, and remands with directions to refund the $250 Valadez paid.

## *B. Interrupting Contempt*

¶25     Valadez contends the circuit court's interrupting contempt finding was clearly erroneous because she was merely trying to object, and she argues the circuit court did not comply with the contempt statute because it identified a penalty without first affording her the right of allocution. The Respondent argues the interrupting contempt finding is not clearly erroneous and that the proper statutory procedure was followed.

¶26     The interrupting contempt falls under Wis. Stat. § 785.03(2)—the summary contempt procedure. Subsection (2) provides:

> The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court. The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.

*Id.* The statute mandates four requirements before a court may impose summary contempt: "(1) The contumacious act must have been committed in the actual presence of the court; (2) the sanction must be imposed for the purpose of preserving order in court; (3) the sanction must be imposed for the purpose of protecting the authority and dignity of the court; and (4) the sanction must be imposed immediately after the contempt." *Oliveto v. Circuit Ct. for Crawford Cnty.*, 194 Wis. 2d 418, 429-30, 533 N.W.2d 819 (1995) (citation omitted).

¶27     Based on her continual interruptions, the circuit court found Valadez in contempt "for willful, intentional violation of my directive to stop talking while [it] conduct[ed] this hearing[.]"  It found that Valadez's repeated interruptions, "[d]espite several warnings to remain quiet[,]" "impair[ed] the authority and dignity of the Court[.]"  Whether "an act or remark is a contempt of court is one which the circuit court has far better opportunity to determine than the reviewing court," and this court will not reverse the finding unless it is clearly erroneous. *Id.* at 427-28.

¶28     As the record set forth above reflects, Valadez repeatedly interrupted the circuit court's ability to conduct the proceeding.  Although Valadez may view her repeated interruptions as justified "objections," the circuit court saw them as misconduct that interfered with its ability to conduct the proceeding and which impaired respect for the court.  The transcript reflects the circuit court noted Valadez's objection and overruled it.  Her challenge was preserved for the purposes of appeal, and yet she continued to repeatedly object despite the circuit court's repeated warnings to her.  The circuit court's finding of contempt is not clearly erroneous.

¶29 The record also reflects the four requirements for summary contempt were met. First, the interrupting occurred "in the actual presence of the court." *See id.* at 429-30. Second, the circuit court found contempt for the "purpose of preserving order." *See id.* at 430. The circuit court was trying to conduct a hearing and needed to hear from the GAL in order to make a decision, and Valadez's repeated interruptions were preventing the circuit court from conducting the hearing. Third, the sanction imposed was to protect "the authority and dignity of the court." *See id.* The circuit court controls the courtroom, and if litigants refuse to follow the procedure set by the circuit court, the circuit court has no authority over the hearing. Fourth, the sanction was imposed "immediately after the contempt." *See id.* Although Valadez is correct that the circuit court mentioned the punitive sanction of "five days" before it afforded her the right of allocution, the mention does not warrant vacatur. *See id.* at 435 (purpose of allocution is to "permit[] the judge to vacate the contempt order entirely or to give a more lenient sanction"). During allocution, Valadez could have apologized for interrupting and promised to not interrupt again, which may have resulted in the circuit court vacating the contempt finding altogether. Moreover, the circuit court's full sanction was not imposed until after Valadez was given the opportunity for allocution.

¶30 Because the circuit court's finding of contempt was not clearly erroneous, and because the circuit court properly used the summary procedure, this court affirms the interrupting contempt finding portion of the circuit court's first order.

### C. Release Contempt

¶31    Valadez also wants her release contempt vacated.  She argues the circuit court gave no legal basis for its order forcing her to sign the release for confidential records; therefore, Valadez believes her failure to sign the release cannot be a contumacious act.  She further argues the circuit court improperly used the summary contempt procedure.

¶32    A circuit court's "power to invoke the summary procedure is very limited." *Gower*, 154 Wis. 2d at 16.  "The power to punish for contempt is drastic and extraordinary, and exists for the purpose of enabling a court to enforce the fair and orderly administration of justice, and to maintain such dignity and discipline as is essential to that end."  *Appeal of Cichon*, 227 Wis. 62, 68, 278 N.W. 1 (1938).  The power "is directed against substantial and not against trivial offenses; and the drastic nature of the power requires that it be not exercised upon light occasion." *Id.*

¶33    As seen from the transcript set forth above, during a status hearing, the circuit court was presented with the issue of Valadez signing the DHHS form to release confidential records.  Valadez expressed concern about signing and wanted more time to determine whether she was even legally required to sign the release at all.  The SPD attorney present was inexperienced with family law matters and did not know whether Valadez was legally required to sign the release form and asked the circuit court to adjourn so he could find out.  The circuit court refused those requests and ordered Valadez to sign the form to release confidential records.

¶34   Although Valadez's refusal to sign the release after being ordered to do so occurred in the circuit court's presence, use of the summary procedure was nevertheless improper under these circumstances.  As already discussed, the summary procedure involves only *punitive* sanctions and requires a punitive sanction to be imposed "*immediately* after the contempt of court and *only for the purpose of preserving order* in the court *and protecting the authority and dignity of the court*."  WIS. STAT. § 785.03(2) (emphasis added).  In other words, summary contempt exists for very specific purposes for which immediate and punitive sanctions are warranted:  to preserve order in the court *and* to protect the authority and dignity of the court.  Both need to be present for summary contempt to be used, and these purposes demonstrate why summary contempt typically arises when a person present at a court proceeding engages in some type of misconduct that disrupts the proceeding itself such that immediate punishment is required.  *See Currie*, 139 Wis. 2d at 547-48 (summary contempt proper when excused juror who was exiting the courtroom said "I hope they hang you" to the defendant as he passed the defense table); *Oliveto*, 194 Wis. 2d at 427, 436 (summary contempt proper when defense attorney "utter[ed] the word 'ridiculous' in an aside to her client"); *State v. Van Laarhoven*, 90 Wis. 2d 67, 69-71, 279 N.W.2d 488 (Ct. App. 1979) (summary contempt proper when just after jury's guilty verdict, the defendant's brother "said to the jury '[a]ll of you, you guys are stupid.  I don't know how you can live with yourselves.'" (alteration in original)).

¶35   Here, the circuit court utilized the summary contempt procedure, which, as noted, allows only for punitive sanctions.  *See* WIS. STAT. § 785.03(2).  Valadez's refusal to sign a release for confidential records she was orally ordered to sign for the first time in the presence of the circuit court, however, more closely resembles a situation requiring a remedial sanction to secure compliance rather

than a punitive one, and remedial sanctions are authorized only under the *nonsummary* procedure. *See* WIS. STAT. § 785.03(1)). Accordingly, when Valadez refused the circuit court's oral order to sign the release, the matter should have been handled under the nonsummary contempt procedure because Valadez's refusal to sign the release was not conduct, statements, or intentional actions that disrupted a particular court proceeding within the meaning of the summary contempt statute. Rather, her refusal to sign involved a party's failure to comply with the court's oral order compelling Valadez to sign a release so that the release could be taken to an entity *outside* the courtroom to gather *confidential* records at a later time.[7] Accordingly, the release contempt finding is vacated and the release contempt order is reversed.

---

[7] This court notes that the Respondent's brief failed to cite to any law establishing his authority to issue an order forcing Valadez to sign the release under these circumstances. Because this court ultimately concludes the conduct at issue here should have been addressed through the nonsummary procedure, it is not necessary to address that issue. Contempt authority, however, must be exercised lawfully, "sparingly[,] and with great deliberation[.]" *See* ***State v. Braunsdorf***, 98 Wis. 2d 569, 587, 297 N.W.2d 808 (1980). "[T]he power to punish for contempt … should not be used arbitrarily, capriciously, or oppressively." ***Currie v. Schwalbach***, 132 Wis. 2d 29, 44, 390 N.W.2d 575 (Ct. App. 1986), *aff'd*, 139 Wis. 2d 544. "The ever present danger that summary powers may be abused has brought appellate courts to view the exercise of such powers with caution and circumspection." ***Id.***

As noted, this court concludes the conduct at issue here should have been addressed through the nonsummary procedure. But, even if the summary procedure applied, the record does not support the use of the summary procedure for the release contempt. Specifically, because the sanction was not imposed to both preserve order in the court and to protect the authority and dignity of the court, the four requirements for the summary contempt procedure identified in ***Oliveto*** were not present here, and the circuit court's findings to the contrary are clearly erroneous. *See* ***Oliveto v. Circuit Ct. for Crawford Cnty.***, 194 Wis. 2d 418, 429-30, 533 N.W.2d 819 (1995).

### III. CONCLUSION

¶36    Valadez appeals two contempt orders containing three contempt findings. This court reverses and vacates the email contempt portion of the first order because the circuit court did not comply with the nonsummary contempt statute. This court affirms the interrupting contempt portion of the first order because the circuit court's findings were not clearly erroneous, and the four requirements to impose a summary punitive contempt sanction were met. This court reverses and vacates the release contempt order because a contempt finding for failure to sign the release as ordered required use of the nonsummary procedure. The case is remanded to the circuit court with directions to refund the $250 Valadez paid on the email contempt.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.